UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CELLCO PARTNERSHIP D/B/A
VERIZON WIRELESS,

                Plaintiff,

        v.

CITY OF ROCHESTER,

                Defendant.
_____

**DECISION AND ORDER**

6:19-CV-06583 EAW

## INTRODUCTION

Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Plaintiff" or "Verizon") brings the instant lawsuit, alleging that the City of Rochester ("Defendant" or "the City"), through its enactment of certain provisions of the City of Rochester Telecommunications Code, has violated Section 253 of the Federal Communications Act of 1934, 47 U.S.C. § 253 ("Section 253"). (Dkt. 1). Presently before the Court is Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for lack of standing and failure to state a claim. (Dkt. 14). Also before the Court is Plaintiff's motion for discovery, requesting an order directing the parties to participate in a Rule 26(f) conference, or scheduling a Rule 16(b) conference, while the Rule 12(b)(6) motion is pending. (Dkt. 16). For the following reasons, Defendant's motion to dismiss (Dkt. 14) is denied, and Plaintiff's motion for discovery (Dkt.16) is denied as moot.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint.  (Dkt. 1).  As is required at this stage of the proceedings, the Court treats Plaintiff's well-pleaded allegations as true.

Plaintiff "constructs and deploys wireless and other facilities for the provision of telecommunications services to the public[.]"  (*Id*. at ¶ 6).  Due to the increasing demand by the public for use of wireless network infrastructure, Plaintiff has begun "densifying" its wireless network infrastructure.  (*Id*. at ¶ 10).  Plaintiff accomplishes this densification with "Small Wireless Facilities," by deploying "next-generation technology," or "5G," and by installing fiber optic cable to connect Small Wireless Facilities to their wireless networks.  (*Id*.).  The Small Wireless Facilities are "smaller, operate closer to the ground, and use less power than current wireless facilities," but "must be connected to the wireless provider's other network equipment so that phone calls and other services . . . can be completed."  (*Id*. at ¶ 11).

Defendant recently made changes to its Telecommunications Code ("the Code") that Plaintiff alleges violate Section 253.  (*Id*. at ¶¶ 1, 33).  Section 253 "bars local governments from imposing statutes, regulations, or requirements that prohibit or have the effect of prohibiting the provision of telecommunications services."  (*Id*. at ¶ 1).  The Federal Communications Commission ("FCC") has issued guidance on Section 253 in an order entitled *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment et al.* (the "FCC Ruling/Order" or the "Barriers Order"), which interprets and implements Section 253.  (*Id*.).  The FCC Ruling/Order recognizes that a local legal requirement constitutes an "effective prohibition," if it "materially limits or

- 2 -

inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." (*Id.*).  Plaintiff contends that in this order, "the FCC has confirmed that a local government's  imposition of the following fees *constitute . . . a material limitation or inhibition on providers' ability to compete, in violation of Section 253*: (a) fees that do not reflect a reasonable approximation of a state or local government's *objectively reasonable costs* of maintaining the rights-of-way used or occupied by a telecommunications service provider, maintaining a structure within the rights-of-way used or occupied by a telecommunications service provider, or processing an application or permit by a telecommunication services provider or (b) fees that are *discriminatory*." (*Id.*) (emphasis added).

Plaintiff alleges that the Code conflicts with Section 253 in two ways: (1) the Code's annual right-of-way[1] compensation fees, which are imposed on telecommunications providers occupying or using the public rights-of-way in the City, violate federal law; and (2) the Code's excess and duplicative fees violate federal law.  Regarding the annual right-of-way fees, Plaintiff identifies three ways in which unlawful fees are included at Section 106-15 of the Code:  the annual fees imposed by the Code are "value-based fees," as opposed to fees based on the City's "actual and objectively reasonable costs" (*id.* at ¶¶ 35-36); the recurring pole attachment fees imposed by the Code—"[o]ne thousand five hundred dollars per standard City-owned pole or standard pole purchased and replaced by

---

[1]     The Code defines "right-of-way" as "[t]he area on, below, or above a City-owned or controlled street, roadway, alley, bridge, tunnel, waterway or sidewalk, including the curbs, gutters, catch basins and related facilities adjacent thereto and any utility easements owned or controlled by the City." (*See* Dkt. 14-3 at 9).

the licensee and dedicated to the City, and $1,000 per smart pole installed by the licensee and dedicated to the City"—are unreasonably high and inconsistent with the FCC Ruling/Order, which found that recurring Small Wireless Facility fees capped at $270 annually were presumptively reasonable (*id*. at ¶¶ 37-40); and the Code's annual underground and aerial installation fees for backhaul[2]—which impose a flat fee up to a certain number of linear feet and then increase on a per linear foot basis—are unreasonably high and are discriminatory (*id*. at ¶¶ 41-58).

Regarding the Code's "excess and duplicative fees," Plaintiff alleges that the Code states that the fees imposed by Section 106-15 are "in addition to any other applicable fees imposed by the Code, including rent, special assessments, and taxes." (*Id*. at ¶ 59). Plaintiff alleges that these "other applicable fees," which are found at Chapters 104 and 106 of the Code, violate Section 253 "where they apply to providers with Small Wireless Facility attachments and/or underground or aerial installations to the extent that they are in excess of and duplicative of the non-cost-based fees" in Section 106-15 of the Code, because "[t]he combined fees are . . . not a reasonable approximation of objectively reasonable costs actually incurred by the City as a result of a provider's use of the right-of-way." (*Id*. at ¶ 60). Plaintiff contends that some of the costs imposed by Chapters 104 and 106 of the Code are also captured in other fee provisions of the Code, "meaning that such costs may be recovered more than once, which would be inherently non-cost-based and unreasonable in violation of Section 253." (*Id*. at ¶ 62; *see also id*. at ¶¶ 63-65).

---

[2]     The Complaint defines "backhaul" as the "connection and carriage of traffic from and/or to the wireless network over the core wireline network." (*See* Dkt. 1 at ¶ 11).

Plaintiff alleges that "[t]o better serve its customers and the City and to begin to serve new customers and provide new services, [it] seeks to extend, densify, and upgrade its wireless network infrastructure, including to install additional Small Wireless Facilities to support the provision of current and next-generation telecommunications services such as 5G and to deploy fiber to connect these facilities." (*Id.* at ¶ 66). Plaintiff further alleges that "[t]o successfully do this, [it] requires new approvals from Defendant to access City property." (*Id.*). The parties have engaged in various communications regarding the Code, both prior to and after the enactment of the provisions at issue, regarding Plaintiff's ability to provide next-generation wireless services in the City. For example, on January 10, 2019, Plaintiff petitioned Defendant in writing, requesting that Defendant not enact the Code for several reasons, including for the reasons alleged in the Complaint. (*Id.* at ¶ 67). Further, on February 7, 2019, Plaintiff provided Defendant with suggested revisions to the Code so that it would comply with federal law, including revisions to the fee provisions in the Code. (*Id.* at ¶ 68). However, on February 20, 2019, the City enacted the Code without incorporating "the vast majority" of Plaintiff's suggested revisions, and on April 1, 2019, the Code took effect. (*Id.* at ¶¶ 69-70).

Thereafter, on April 15, 2019, Plaintiff sought clarification from Defendant as to whether it believed the Code provisions complied with federal law. (*Id.* at ¶ 71). Plaintiff further "advised Defendant in that letter that it was eager to deploy wireless network infrastructure to enable it to offer next-generation wireless services in the City, but the City's response would affect [its] ability to do so." (*Id.*). On April 29, 2019, Defendant responded that it had "concluded that [its] permit fees and recurring fees for use of the

City's rights of way, including those for pole attachments related to the deployment of small wireless facilities, comply with all federal law requirements and limitations." (*Id.* at ¶ 72). Finally, on July 30, 2019, Defendant wrote to Plaintiff, advising that in order to comply with the Code, Plaintiff was required by October 1, 2019, "to register under Section 106-5 of the Code, complete and enter into a Master License Agreement, complete Permit applications as necessary, and make 'payment of all fees and compensation due to the City that accrued as of the effective date of [the Code].'" (*Id.* at ¶ 74).

Plaintiff alleges that it "has been, and will continue to be, damaged and irreparably harmed" due to Defendant's actions. Plaintiff alleges that the harm caused by Defendant's actions materially inhibit its:

> (a) ability to provide the public with telecommunications services, including the ability to provide emergency communications; (b) ability to compete with other providers of telecommunications services; and (c) full use of its existing licenses and business investments, all of which are irretrievably impairing [Plaintiff's] good will and business reputation.

(*Id.* at ¶ 75).

The Complaint includes two cause of action: (1) violation of Sections 253(a) and (c), for unfair and unreasonable Small Wireless Facility attachment fees that prohibit or have the effect of prohibiting telecommunications service (*id.* at ¶¶ 78-86), and (2) violation of Sections 253(a) and (c), for unfair and unreasonable underground and aerial facility rights-of-way fees that prohibit or have the effect of prohibiting telecommunications service (*id.* at ¶¶ 87-94). Plaintiff seeks declaratory relief that various provisions of the Code violate Section 253, as well as injunctive relief prohibiting Defendant from enforcing those provisions of the Code. (*Id.* at ¶ 2).

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing its Complaint and attached exhibits on August 8, 2019.  (Dkt. 1 & Dkt. 3).  After obtaining an extension of time to move against the Complaint (Dkt. 9), Defendant filed its motion to dismiss on October 18, 2019 (Dkt. 14).  Thereafter, on November 6, 2019, Plaintiff filed its motion for discovery, requesting that the Court order the parties to participate in a Rule 26(f) conference, or that the Court set a Rule 16(b) scheduling conference, notwithstanding the pending motion to dismiss. (Dkt. 16).  Plaintiff filed its response to Defendant's motion to dismiss on November 8, 2019 (Dkt. 18), and Defendant filed a reply on November 15, 2019 (Dkt. 19).  Defendant responded to Plaintiff's motion for discovery on December 2, 2019 (Dkt. 20), and Plaintiff filed a reply brief on December 9, 2019 (Dkt. 21).

## DISCUSSION

### I.   Defendant's Motion to Dismiss

The Court initially notes that Defendant has brought its motion to dismiss, including its challenge to Plaintiff's standing, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  (*See* Dkt. 14).  "Although standing challenges have been brought under Rule 12(b)(6), 'the proper procedural route is under Rule 12(b)(1).'"  *Lugones v. Pete and Gerry's Organic*, No. 19 Civ. 2097 (KPF), 2020 WL 871521, at *5 (S.D.N.Y. Feb. 21, 2020) (quoting *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006)).  Fed. R. Civ. P. 12(b)(1) provides that the court may dismiss a claim for lack of subject-matter jurisdiction.  "Although lack of Article III standing and subject-matter jurisdiction are distinct concepts . . . Article III

standing remains . . . a limitation on the authority of a federal court to exercise jurisdiction."
*All. For Envtl. Renewal, Inc*., 436 F.3d at 88 n.6 (citation omitted).  Accordingly, the Court
will evaluate Plaintiff's standing argument as if filed as a motion under Rule 12(b)(1).
"Where . . . the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well
as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it
must dismiss the complaint for lack of subject matter jurisdiction, the accompanying
defenses and objections become moot and do not need to be determined."  *Rhulen Agency,
Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quotation omitted).
Accordingly, the Court will first address Defendant's challenge to Plaintiff's standing to
sue.

### A.    Plaintiff has Adequately Alleged Standing

Defendant first argues that Plaintiff lacks standing to bring its claims because
Plaintiff did not register or enter into a license under the Code.  (Dkt. 14-5 at 1).
Specifically, Defendant contends that the Complaint does not allege that Plaintiff has
facilities in the City right-of-way or intends to install such facilities in the future, whether
those facilities would be subject to the Code, what fees Plaintiff would incur as a result of
those facilities, and what fees Plaintiff is capable of paying.  (*Id*. at 6-7).  Defendant
concludes that, as a result, Plaintiff has not sustained an injury as a result of the Code and
therefore does not have standing.  (*Id*. at 7).  In response, Plaintiff argues that it has brought
a facial challenge to the Code, not an as-applied challenge, and therefore it need only allege
that it has an actual and well-founded fear that the Code will be enforced against it.  (Dkt.
18 at 6, 9).

1.   **Standard**

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack

of subject matter jurisdiction if the court lacks the statutory or constitutional power to

adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the

action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 416-17

(2d Cir. 2015) (quotation and citation omitted).  "In order to survive a defendant's motion

to dismiss for lack of subject matter jurisdiction, a plaintiff must allege facts 'that

affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research,

L.L.C.*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v.

S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

"When the Rule 12(b)(1) motion is facial, *i.e.,* based solely on the allegations of the

complaint or the complaint and exhibits attached to it . . . the plaintiff has no evidentiary

burden."  *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

"'Because standing is challenged [here] on the basis of the pleadings, we accept as true all

material allegations of the complaint, and must construe the complaint in favor of

[Plaintiffs].'" *Alliance for Open Society Int'l, Inc. v. U.S. Agency for Int'l Dev*., 651 F.3d

218, 227 (2d Cir. 2011), *aff'd*, 570 U.S. 205 (2013) (quoting *W.R. Huff Asset Mgmt. Co.,

LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)) (alterations in original).

"'[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor

must the plaintiff prove his allegations of injury.'" *Fin. Guar. Ins. Co. v. Putnam Advisory

Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015) (quoting *Baur v. Veneman*, 352 F.3d 625, 631

(2d Cir. 2003)).

2. **Discussion**

"To satisfy the requirements of Article III standing, plaintiffs must demonstrate '(1) [an] injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.'" *Hu v. City of N.Y.*, 927 F.3d 81, 89 (2d Cir. 2019) (quoting *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)) (alteration in original).

While Defendant challenges Plaintiff's standing to bring this case, the Court finds that Plaintiff's Complaint also raises the issue of ripeness. Although neither party has specifically addressed this issue, the Court notes that several of the cases cited by Plaintiff (*see* Dkt. 18 at 12-13) address whether similar claims—*i.e.*, where a telecommunications provider has not submitted to a particular law—are ripe for adjudication by the Court. *See, e.g., TC Sys., Inc. v. Town of Colonie*, 263 F. Supp. 2d 471, 479 (N.D.N.Y. 2003) (considering whether the plaintiff's claims should be dismissed as unripe because it had not applied for a franchise under the local law); *see also NextG Networks of Calif. v. City of Huntington Beach*, No. SACV07-01471 ABC (CTx), 2009 WL 10672783, at *4 (C.D. Cal. Feb. 23, 2009); *Verizon Wireless (VAW) LLC v. City of Rio Rancho, NM*, 476 F. Supp. 2d 1325, 1330 (D.N.M. 2007); *PECO Energy Co. v. Twp. of Haverford*, No. 99-4766, 1999 WL 1240941, at *2 (E.D. Pa. Dec. 20, 1999); *AT&T Commc'ns of the Southwest, Inc. v. City of Austin, TX*, 975 F. Supp. 928, 937 (W.D. Tx. 1997). Indeed, Defendant's standing challenge is inextricably intertwined with issues of ripeness. *See NextG Networks of N.Y.,*

*Inc. v. City of N.Y.*, No. 03 Civ. 9672(RMB), 2004 WL 2884308, at *6 (S.D.N.Y. Dec. 10, 2004) (where the defendants argued that the City had not refused to entertain or foreclosed a request by the plaintiff for permission to install its equipment on City-owned street poles, considering whether the plaintiff's claim was ripe for judicial review, as the plaintiff "challenged the very requirement that it apply for and obtain a franchise under the terms of the City Charter. . . ."). In its reply brief, Defendant concedes that the analyses for ripeness and standing issues are "closely related." (*See* Dkt. 19 at 4 n.2). Likewise, Plaintiff notes that "[t]o the extent [it] relies on any decisions also analyzing ripeness considerations, they directly apply to the City's challenge here because the ripeness doctrine's constitutional requirement of imminent injury overlaps with the same standing requirement and concerns the same challenge here." (Dkt. 18 at 13 n.5). Accordingly, in conjunction with considering whether Plaintiff has standing to bring this case, the Court also specifically considers whether Plaintiff's claims are ripe for adjudication.

The "basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. . . . Thus, the doctrine

implicates two distinct conceptual jurisdictional criteria." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotations and citations omitted). [3]

The Court notes that "constitutional ripeness" is "a specific application of the actual injury aspect of Article III standing" *i.e.*, an injury-in-fact. *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688. "Constitutional ripeness, in other words, is really just about the first [standing] factor—to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Id.* (citation omitted). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (To establish standing, "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical.'") (internal quotation and citations omitted). It is this inquiry that is at the crux of Defendant's argument that Plaintiff lacks standing to bring its claims. (*See* Dkt. 14-5 at 7 ("[W]ithout articulating any concrete

---

[3]     There are two forms of ripeness: constitutional ripeness and prudential ripeness. As explained in *Simmonds v. I.N.S.*, 326 F.3d 351 (2d Cir. 2003), "[c]onstitutional ripeness is a doctrine that, like standing, is a limitation on the power of the judiciary. It prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it. But when a court declares that a case is not prudentially ripe, it means that the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay. *Id.* at 357; *see also TNB USA Inc. v. Fed. Reserve Bank of N.Y.*, No. 1:18-cv-7978 (ALC), 2020 WL 1445806, at *8 (S.D.N.Y. Mar. 25, 2020) ("Whereas constitutional ripeness informs whether a court *can* decide a case before it, prudential ripeness allows courts to determine whether a case would 'be *better* decided later and that the parties will not have constitutional rights undermined by the delay.'") (quoting *Simmonds*, 326 F.3d at 357). Defendant's standing argument implicates whether Plaintiff's claims are constitutionally unripe, *i.e.*, whether Plaintiff has sustained an injury-in-fact.

harm resulting from the City's Telecom Code, [Plaintiff] does not have standing to maintain this suit.")).

Plaintiff has adequately alleged a concrete and particularized injury based on its existing and planned wireless infrastructure, which would be affected by the Code. Plaintiff alleges that it has existing wireless infrastructure and customers located in City of Rochester.  (*See* Dkt. 1 at ¶ 66 ("To better serve its customers and the City and to begin to serve new customers and provide new services. . . .")).  Further, the aforementioned communications between the parties, which are attached to the Complaint, confirm that Plaintiff has existing wireless infrastructure that would be affected by the new, allegedly unlawful provisions in the Code.  (*See* Dkt. 3 at 2 ("As providers of wireless and wireline communications services in Rochester," Plaintiff and its affiliates "are significantly affected by the Ordinance and are concerned that many of its provisions would deter [them] from investing in and deploying wireless and wireline facilities in the City."); *id*. at 8-9 (July 30, 2019 letter from City to Plaintiff, advising it of new Code requirements, informing Plaintiff that all entities subject to the Code have six months to achieve compliance, and directing Plaintiff to complete the City's Master License Agreement)).  Plaintiff's Complaint also discusses its plans to "extend, densify, and upgrade its wireless network infrastructure, including to install additional Small Wireless Facilities to support the provision of current and next-generation telecommunications services such as 5G and to deploy fiber to connect these facilities."  (Dkt. 1 at ¶ 66).  Plaintiff explains that, "[t]o successfully do this, [it] requires new approvals from Defendant to access City property."  (*Id*.).  Further, Plaintiff has alleged that the injury it faces due to the enactment of the Code

is actual or imminent.  In a letter dated April 15, 2019, Plaintiff informed Defendant that it was eager to provide wireless network infrastructure in the City, "but the City's response would affect Verizon Wireless's ability to do so."  (*Id*. at ¶ 71).  On July 30, 2019, the City sent a letter to Plaintiff, informing it that "[t]he time for compliance with the Code is fast approaching."  (Dkt. 3 at 9).  Based on these communications, it was reasonable for Plaintiff to believe that the Code would be enforced against it.  At this stage of the litigation, these allegations are sufficient to allege that Plaintiff is and will be affected by the Code. *See Verizon Wireless (VAW) LLC*, 476 F. Supp. 2d at 1331 (the plaintiff's allegations that it desired to "upgrade [its] networks within the City if they are to provide adequate service to existing and prospective customers" were "sufficiently concrete to satisfy the injury-in-fact test" and "[t]he conflict between the Companies and the Ordinance [was] imminent.").

In its reply memorandum of law, Defendant argues that these allegations are not sufficient to establish standing.  (Dkt.19 at 2).  Defendant argues that Plaintiff has included only one paragraph in its Complaint which speaks to how it would be injured by the enactment of Code, and has not "set forth what facilities that it currently has in the City right-of-way that would be subject to the Telecom Code, its current annual costs for those facilities, whether those costs will change under the Telecom Code, what facilities it intends to install, when it intends to install those facilities, and whether the fees charged for those facilities under the Telecom Code will have the effect of prohibiting Verizon from offering telecommunications services."  (*Id*. at 3).

Defendant misapprehends the standard on a motion to dismiss.  "To survive the motion to dismiss, the pleadings must only 'allege facts that affirmatively and plausibly

- 14 -

suggest that [Plaintiffs have] standing to sue.'"  *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 437 (S.D.N.Y. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)) (alteration in original).  "[A]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."  *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (internal quotations and citation omitted).  A plaintiff's standing allegations need not be crafted with "precise detail," *see Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018), and the Second Circuit has "repeatedly described [the injury-in-fact] requirement as 'a low threshold,' . . . which 'helps to ensure that the plaintiff has a personal stake in the outcome of the controversy,'" *see John*, 858 F.3d at 736 (citations omitted).  As more fully explained above, Plaintiff has alleged that it has and will sustain a concrete and particularized injury by virtue of the enactment of the City's new Code provisions.  Plaintiff is not required to include a high level of detail in the Complaint, as suggested by Defendant.  Accordingly, Plaintiff has adequately alleged that it has standing to bring this case, and its claims are constitutionally ripe for judicial consideration.

Defendant cites two cases in its memorandum of law in support of its motion to dismiss that it contends stand for the proposition that "[g]enerally, in order to establish standing to challenge an allegedly unlawful policy, a plaintiff must submit to the challenged policy."  (*See* Dkt. 14-5 at 7).  Both cases cited by Defendant are distinguishable.  Defendant cites *New Phone Co., Inc. v. City of N.Y.*, No. 03 CV 3978 (JG)(KAM), 2006 WL 6908254 (E.D.N.Y. Aug. 25, 2006), *aff'd*, 355 F. App'x 501 (2d Cir. 2009), where the Court found that the plaintiff did not have standing because it did not

allege "that the City would have denied plaintiff's application for a franchise and permit, had plaintiff completed the application process," or "that its application would have been futile." *Id.* at \*8. Defendant also cites *Libertarian Party of Erie Cnty. v. Cuomo*, 300 F. Supp. 3d 424 (W.D.N.Y. 2018), where the Court determined that the plaintiffs, who had not applied for a firearms license, lacked standing to challenge the constitutionality of the licensing laws. *Id.* at 433. The Court explained that "[o]f course, the named Plaintiffs may avoid [applying for a firearms license in NYS] by making a substantial showing that their applications would be futile," but noted that the plaintiffs "[did] not allege futility in the Amended Complaint." *Id.* (emphasis added). As explained above, unlike the plaintiffs in *New Phone Co.* and *Libertarian Party*, Plaintiff has alleged that the unlawful provisions of the Code have caused it to sustain an actual injury by virtue of its provision of wireless services in Rochester and its plans to provide updated wireless facilities in the City. Further, Plaintiff has alleged that any action it could take to obtain a license without paying the challenged fees under the Code would be futile. Plaintiff's Complaint details several communications between the parties, in which Defendant confirmed that the provisions of the Code, which Plaintiff alleges are unlawful, would be enforced against it. (*See* Dkt. 1 at ¶¶ 67-75 & Dkt. 3). Accordingly, Plaintiff was not required to submit to the Code before challenging it in court. *See Bach v. Pataki*, 408 F.3d 75, 82-83 (2d Cir. 2005) (the plaintiff was not required to complete and file an application where "[t]he State Police informed [the plaintiff] that he was statutorily ineligible for a carry license," and the plaintiff "had nothing to gain thereafter by completing and filing an application."); *Williams v. Lambert*, 46 F.3d 1275, 1280-81 (2d Cir. 1995) ("Williams could still file a petition in the New York

state courts for a modification of her [support] agreement.  Such a gesture, however, would be a futile one, as her case would be dismissed summarily under the clear language of Section 516. . . .  We will not require such a futile gesture as a prerequisite for adjudication in federal court.").

Defendant further contends that Plaintiff's Complaint "is also silent as to the question of what fees Verizon is capable of paying—indeed, Verizon sets forth no facts whatsoever concerning its revenues or income against which the burden of cumulative fees might be measured."  (Dkt. 14-5 at 6-7).  Defendant questions any injury sustained by Plaintiff due to the Code's fee structure, stating "[i]t is hard to see how the fees set forth in Rochester's Telecom Code could make any sizeable dent in [Verizon's revenues and profit]."  (*Id*. at 7).  Defendant submits a 108-page financial report (*see* Dkt.14-4), in support of its contention that Plaintiff has the ability to pay the fees mandated by the Code. In other words, Defendant suggests that because Plaintiff can pay the fees mandated by the Code, it does not have standing to bring this case.  The Court disagrees.  Plaintiff's challenges to the fee provisions in the Code are not based on its ability to pay those fees, but rather based upon their alleged circumvention of federal law—namely, their failure to be related to Defendant's objectively reasonable costs and their discriminatory nature. Plaintiff's ability to pay the fees mandated by the Code does not affect whether the Code is preempted by federal law.

To be clear, the Court's decision resolves the standing issue for purposes of the motion to dismiss.  In other words, Plaintiff has adequately alleged standing at this stage of the litigation.  However, that does not mean that Plaintiff will ultimately be successful

in establishing standing.  *See Lujan*, 504 U.S. at561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'  In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts. . . .'  And at the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'").

Finally, the Court notes that in its reply memorandum of law, Defendant states that "[u]pon information and belief, Verizon does not currently have <u>any</u> facilities in the City's right of way and, instead, leases facilities from other third-party providers.  This may account for Verizon's silence in the complaint as to its current deployment of facilities in the right of way."  (*See* Dkt. 19 at 2).  Even if Defendant can substantiate this claim, the City has not explained how or why it would divest Plaintiff of standing.  But in any event, as noted previously, Defendant has only mounted a facial challenge on the basis for standing, and it would not be proper through a reply memorandum to attempt to expand the basis for the motion to facts outside the pleadings.  Accordingly, Defendant's motion to dismiss Plaintiff's complaint based on a lack of standing is denied.

## B.   **Plaintiff's TCA Claims**

Defendant next argues that, even if Plaintiff has standing to bring this case, its Complaint fails to allege a violation of Section 253 by the City.  (Dkt. 14-5 at 8).  Defendant contends that Plaintiff has failed to plead a facial violation of the Code; that is, Plaintiff has failed to establish "that no set of circumstances exists under which the [laws] would be

valid."  (*Id.*) (quoting *Libertarian Party*, 300 F. Supp. 3d at 439) (alteration in original).

Specifically, Defendant argues that Plaintiff "[o]nce again . . . [has failed] to set forth any

facts as to its intended 5G deployment and the impact of fees on its bottom line," which

"renders its conclusory allegations of effective prohibition and material inhibition entirely

conclusory and subject to dismissal."  (*Id.* at 9).  Defendant also challenges Plaintiff's

reliance on the "Barriers Order," or the "FCC Ruling/Order."  (*Id.*).  Defendant contends

that this Order is "under vigorous attack by municipalities and other entities around the

Country," for its conclusion that right-of-way fees qualify as a material inhibition for

violation of § 253.  (*Id.* at 9-10).  Defendant explains in a footnote that the "many

challenges" to the Barriers Order are consolidated in the Ninth Circuit and notes that, if

Plaintiff's Complaint survives the motion to dismiss, "it may be prudent to stay further

proceedings until the 9th Circuit reaches a decision on the merits of the FCC Barriers

Order."  (*Id.* at 9 n.4).

### 1.   Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the complaint, documents

attached to the complaint as exhibits, and documents incorporated by reference in the

complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court

should consider the motion by "accepting all factual allegations as true and drawing all

reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund

v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017).

To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## 2.   <u>Discussion</u>

In 1996, Congress enacted the TCA "to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services."  H.R. Conf. Rep. No. 104-458, at 113 (1996).  Section 253(a) of the TCA provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."  *See* 47 U.S.C. § 253(a).  "Section 253 is, at its core, a preemption statute . . . the purpose of [which] is to impose some limits on the ability of

state and local governments to regulate telecommunications." *Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y.*, No. 12-CV-6157(CS), 2013 WL 3357169, at *12 (S.D.N.Y. July 3, 2013) (internal quotations and citations omitted), *aff'd*, 552 F. App'x 47 (2d Cir. 2014).  "[A] prohibition does not need to be complete or 'insurmountable' to run afoul of § 253(a)." *TCG N.Y., Inc. v. City of White Plains*, 305 F.3d 67, 76 (2d Cir. 2002).

Plaintiff's Complaint does not allege that the Code outright prohibits it from providing telecommunications services.  Rather, Plaintiff contends that the fee provisions in the Code effectively prohibit it from providing telecommunications services.  To that end, Plaintiff alleges:

> Soon after the enactment of Section 253, the FCC offered guidance for determining whether local laws "have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service," directing courts to consider "whether the ordinance materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment."

(Dkt. 1 at ¶ 18); *see also TCG New York, Inc.*, 305 F.3d at 76  ("Additionally, the FCC has stated that, in determining whether an ordinance has the effect of prohibiting the provision of telecommunications services, it 'consider[s] whether the ordinance materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment.'") (citation omitted).  Plaintiff alleges that the FCC Ruling/Order:

> has confirmed that a local government's imposition of the following fees constitute . . . a material limitation or inhibition on providers' ability to compete, in violation of Section 253: (a) fees that do not reflect a reasonable approximation of a state or local government's objectively reasonable costs of maintaining the rights-of-way used or occupied by a telecommunications service provider, maintaining a structure within the rights-of-way used or

- 21 -

occupied by a telecommunications service provider, or processing an application or permit by a telecommunication services provider or (b) fees that are discriminatory.

(*Id*. at ¶ 1; *see also id*. at ¶ 24 ("[T]he FCC has made clear that the phrase 'fair and reasonable compensation' only allows state or local governments to charge fees that recover a reasonable approximation of the state or local governments' actual and reasonable costs, where the costs being passed on are themselves objectively reasonable for maintaining the right-of-way, maintaining a structure within the right-of-way, or processing an application or permit."); *id*. at ¶ 25 ("In the *FCC Ruling/Order*, the FCC found that, to be consistent with Section 253, fees imposed by local governments for the attachment of Small Wireless Facilities in the public rights-of-way must meet the following requirements: (1) be a reasonable approximation of the local government's costs in connection with a provider's use of the right-of-way to deploy facilities; (2) only include objectively reasonable costs; and (3) be non-discriminatory.")).  While Defendant notes that municipalities have challenged the FCC Ruling/Order in court, it does not contend that Plaintiff's Complaint misrepresents the contents of the FCC Ruling/Order.  The validity FCC Ruling/Order is not an issue considered by the Court at this juncture.  The Court looks only to the allegations in the Complaint.

Plaintiff identifies specific provisions of the Code it alleges do not reflect a reasonable approximation of the City's costs, including the Code's annual right-of-way compensation fees, which are value-based, rather than cost-based.  (*Id*. at ¶¶ 35-36). Defendant cites to Section 106-15(B) of the Code, which states:

Right-of-way compensation.  All licensees shall pay annually to the City, as compensation for use of the City's right-of-way and/or for the use of municipal facilities, the reasonably approximate costs for the maintenance, operation and management of the right-of-way related to such use, including but not limited to site inspection costs, repair and maintenance costs of municipal facilities and the right-of-way, administrative costs for retaining and managing documents and records, legal services costs for master license agreements and other related documents and issues, costs for managing, coordinating and responding to public concerns and complaints, the costs of the City's self-insurance *and the value of the right-of-way and the municipal facilities, in the following annual amounts*. . . ."

(Dkt. 14-3 at 22) (emphases added).  In other words, Plaintiff alleges that because the Code purports to impose fees which amount to "the value of the right-of-way and the municipal facilities," it is at odds with the FCC Ruling/Order, which prohibits value-based fees.

Plaintiff also alleges that the Code's annual pole attachment fees violate the TCA. (Dkt. 1 at ¶ 37).  Specifically, Plaintiff contends that the pole attachment fees conflict with the FCC Ruling/Order, which instructs that "*recurring* Small Wireless Facility fees capped at $270 annually, which includes all recurring fees related to the Small Wireless facility, such as any possible right-of-way access fee or fee for attachment to municipally-owned structures in the right-of-way," are presumptively consistent with Section 253 requirements.  (*Id*. at ¶ 38; *see also id*. at ¶ 27 ("While the fees local governments charge for attaching wireless facilities generally must be based on actual costs to the government, the FCC has presumed that a fee of $270 per Small Wireless Facility attachment per year for all recurring fees would be 'fair and reasonable compensation' and not prohibited by Section 253.")).  The Code imposes a pole attachment fee of "[o]ne thousand five hundred dollars per standard City-owned pole or standard pole purchased and replaced by the licensee and dedicated to the City, and $1,000 per smart pole installed by the licensee and

dedicated to the City.  Any smart poles installed by the City shall be such amount as set forth in a master license agreement."  (*Id*. at ¶ 37).  Plaintiff alleges that the recurring pole attachment fees "far exceed the presumptively reasonable limit established by the *FCC Ruling/Order* and are not based on a reasonable approximation of objectively reasonable costs actually incurred by the City as a result of a provider's attachment of a Small Wireless Facility to municipal poles."  (*Id*. at ¶ 39).  Plaintiff further alleges that when it asked the City to provide justification for the above-mentioned rates, "the City did not provide any substantiation based on costs."  (*Id*.).

Further, Plaintiff alleges that the Code's annual underground and aerial installation fees for backhaul are not cost-based, are unreasonably high, and are discriminatory.  (*Id*. at ¶ 41).  Plaintiff cites to Section 106-15 of the Code, which provides the following provisions for computing right-of-way compensation:

> (1) Underground installations.
>    (a) Open trenching.  In the first year, $10,000 for up to 2,500 linear feet of telecommunications facilities per contiguous site, per conduit or multiple conduits up to five inches total in diameter in the right-of-way, $1.50 per linear foot for 2,500 through 12,500 liner feet of telecommunications facilities and $0.75 per linear foot thereafter.  Annually after the first year of installation, $5,000 for up to 2,500 linear feet of telecommunications facilities and $1 per linear foot for 2,500 through 12,500 linear feet of telecommunications facilities and $0.50 per linear foot thereafter;
>
>    (b) Installation in existing facilities.  Five thousand dollars for up to 2,500 linear feet of telecommunications facilities, including wire, fiber  optic strands, innerduct or other facilities which do not require installation of new conduit and are installed in existing facilities and $1 per linear foot for 2,500 through 12,500 linear feet of telecommunications facilities and $0.50 per linear foot thereafter;

(c) Directional boring. In the first year, $500 for each site of excavation required to facilitate directional boring for placement of conduit or multiple conduits up to five inches total in diameter in the right-of-way and $1.50 per linear foot of installed facilities resulting from such directional boring for 2,500 through 12,500 linear feet of telecommunications facilities and $0.75 per linear foot thereafter. Annually after the first year, $5,000 for up to 2,500 linear feet of installed telecommunications facilities and $1 per linear foot for 2,500 through 12,500 linear feet of telecommunications facilities and $0.50 per linear foot thereafter[.]

(*Id*. (quoting Code, § 106-15(b)); *see also* Dkt. 14-3 at 22-23).

Plaintiff alleges that because the Code imposes the same $10,000 first-year and $5,000 subsequent-year fees for use of either one foot or 2,500 linear feet, the fees cannot be cost-based. (*Id*. at ¶ 43). Plaintiff further alleges that the fees are discriminatory because the Code imposes the same fee on a provider using one linear foot as it imposes on another provider using 2,500 linear feet. (*Id*. at ¶ 44). Plaintiff alleges that "[o]n information and belief, the City's actual and reasonable costs are not flat for the first 2,500 linear feet for 'underground installations,' regardless of whether the facilities are placed underground through open trenching, in existing facilities, or through directional boring." (*Id*.). Plaintiff explains that its belief is supported by the "fee structure above 2,500 linear feet," which "increases on a per linear foot basis," and "demonstrates that a significant portion of the City's costs vary based on the length of the build. . . ." (*Id*. at ¶ 45). Plaintiff alleges that the Code's fee structure for aerial installations suffers the same deficiencies (*id*. at ¶¶ 49-56):

(2) Aerial installations. Aerial installation of fiber or other telecommunications facilities and accessory equipment strung between poles, buildings, or other facilities, is strongly discouraged due to area weather, safety concerns, limited capacity, and aesthetic disturbances. Upon

> demonstrating that there is no reasonable alternative to such installation, and if such installation is approved, then $10,000 for up to 2,500 linear feet of telecommunications facilities, $1.50 per linear foot for 2,500 through 12,500 linear feet of telecommunications facilities and equipment and $0.75 per linear foot thereafter.  Annually after the first year of installation, $5,000 for up to 2,500 linear feet of telecommunications facilities and $1 per linear foot for 2,500 through 12,500 linear feet of telecommunications facilities and $0.50 per linear foot thereafter.

(*Id*. at ¶ 49 (quoting Code, § 106-15(B)(2)); *see also* Dkt. 14-3 at 23).  In other words, Plaintiff has alleged that (1) these Code provisions impose fees that cannot be cost-based, because they impose the same fee for a provider installing one foot of telecommunications facilities, versus the installation of 2,500 feet of telecommunications facilities; and (2) the Code provisions are discriminatory, because they require a provider installing one foot of telecommunications facilities to pay the same fee as a provider installing 2,500 feet of wireless facilities.

Finally, Plaintiff alleges that the Code's excess and duplicative fees violate federal law.  Plaintiff again cites to Section 106-15(F), which states that "[t]he compensation set forth in this section . . . shall be exclusive of, and in addition to, any other applicable fees, including but not limited to permit fees, registration costs, or other costs established by this chapter or by Chapter 104, any rental amounts for lease of City municipal facilities and all special assessments and taxes of whatever nature."  (*Id*. at ¶ 59) (emphasis added).  Plaintiff explains that these "other applicable fees" violate Section 253, to the extent they are in excess of and duplicative of the non-cost-based fees, or other fee provisions in the Code.  (*Id*. at ¶¶ 60, 62-66).  Plaintiff further alleges that the Code's allowance for "other

applicable fees . . . move[s] even further away from the reasonable approximation of actual and objectively reasonable costs required by the law." (*Id*. at ¶ 61).

Defendant disputes Plaintiff's reading of the Code. Defendant contends that Plaintiff has "purposefully misread the City's Telecom Code," in order to allege the City's right-of-way fees are not a reasonable approximation of its costs. (Dkt. 14-5 at 10). Defendant contends that the Code "expressly states that the right-of-way fees are based on 'the reasonably approximate costs' for the 'maintenance, operation and management' of the right-of-way related to the permitted telecommunication-related use." (*Id*.) (quoting Code, § 106-15(B)). Defendant argues that Plaintiff has misrepresented Section 106-15, "contending that each of these categories are *independent recurring fees* that the City may levy in addition to those fees set forth in the Telecom Code." (*Id*.).

The Court has reviewed Section 106-15(B) of the Code, and notes that it does state that "[a]ll licensees shall pay annually to the City, as compensation for use of the City's right-of-way and/or for the use of municipal facilities, the reasonably approximate costs for the maintenance, operation and management of the right-of-way related to such use. . . ." (Dkt. 14-3 at 22). However, Section 106-15 also states that those costs include "the value of the right-of-way and the municipal facilities." (*Id*.). In its reply brief, Defendant argues that the value-based costs pertain to the City's costs for self-insurance. (*See* Dkt. 19 at 8 ("But the City has already argued that the word value as used in this section merely indicates that the City's self-insurance costs are based upon the value of the use of the right of way.")). However, the Code provision at issue does not state, "the cost of the City's self-insurance *based on* the value of the right of way." Rather, the Code refers to a number

of "right-of-way compensation" fees, "including but not limited to . . . the costs of the City's self-insurance *and* the value of the right-of-way and the municipal facilities. . . ." (Dkt. 14-3 at 22) (emphasis added).

Defendant further argues that Plaintiff's assertion that the fees imposed by the Code for the installation of Small Wireless Facilities is incorrect because the FCC Ruling/Order—finding that a fee of $270 was presumptively reasonable—also provides that "it is the standard itself, not the particular, presumptive fee levels we articulate, that ultimately will govern whether a particular fee is allowed under Section 253." (Dkt. 14-5 at 11). Aside from the fact that the Court has no information as to why the particular fee imposed by the Code is reasonable, Plaintiff has alleged that the Code imposes a fee of $1,500 for a standard pole and $1,000 for a smart pole, which is almost four to six times the amount determined to be presumptively reasonable by the FCC. Thus, Plaintiff has plausibly alleged that the fees imposed by the Code for the installation of Small Wireless Facilities are unreasonable and violate the TCA.

Defendant also argues that, even if Plaintiff has alleged a violation of the TCA, the Code is "saved under § 253(c)," which provides that "[n]othing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government." (Dkt. 14-5 at 12; *see also* 47 U.S.C. § 253(c)). Defendant cites to *TCG N.Y., Inc.*, where the Court decided "on stipulated facts" whether the fee provisions at issue provided for fair and

reasonable compensation, which was competitively neutral and non-discriminatory. 305 F.3d at 71, 75-79. "In order for the fee to fall within this savings clause, the fee must constitute 'fair and reasonable compensation' and must be applied 'on a nondiscriminatory basis.'" *Id.* at 77. "Once the party seeking preemption has sustained its burden of showing that a local regulation has violated § 253(a), the burden of proving that the regulation is saved by § 253(c) is on the party claiming that the 'safe harbor' applies[.]" *TC Sys., Inc.*, 263 F. Supp. 2d at 484. In this respect, Defendant's argument is misplaced. Whether the specific fees imposed by the Code are reasonable is not an issue the Court can resolve at this point of the litigation. *Cf. Coastal Commc'ns Serv., Inc. v. City of N.Y.*, 658 F. Supp. 2d 425, 436-37, 447 (E.D.N.Y. 2009) (determining on summary judgment that the TCA's safe harbor provision did not apply). Defendant does not offer any explanation as to why the fees imposed by the Code are reasonable, other than to point to self-serving language in the Code that the fees are "reasonably approximate costs for the maintenance, operation, and management of the right-of-way related to such use. . . ." As explained above, Plaintiff has adequately alleged that the Code provisions impose costs that are both unreasonable and discriminatory. Defendant is not entitled to dismissal based on the safe harbor provision in the TCA.

In sum, Plaintiff has successfully alleged a violation of the TCA. Plaintiff has identified specific provisions in the Code which it alleges have the effect of prohibiting the provision of telecommunications services, as such a prohibition is interpreted by the FCC Ruling/Order. Further, Plaintiff has explained that, by virtue of its provision of telecommunications services in Rochester and its plans to expand and densify its wireless

infrastructure to provide services in the City, it has standing to bring its claims.  Whether the FCC Ruling/Order will be upheld, or whether Plaintiff can demonstrate that the fees imposed by the Code are unreasonable or discriminatory and therefore violate the TCA, remains to be seen.  However, at this point of the litigation, Plaintiff has stated a claim for violation of the TCA. Defendant's motion to dismiss is therefore denied.

## II.     **Plaintiff's Motion for Discovery**

Having denied Defendant's motion to dismiss the Complaint, the case will proceed to discovery.  Therefore, Plaintiff's motion for discovery (Dkt. 16) is denied as moot.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 14) is denied, and Plaintiff's motion for discovery (Dkt. 16) is denied as moot.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:  June 11, 2020
       Rochester, New York