UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CELLCO PARTNERSHIP D/B/A VERIZON
WIRELESS,

     Plaintiff,

   v.

CITY OF ROCHESTER,

     Defendant.

---

6:19-cv-06583-EAW-MWP

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE CITY OF
ROCHESTER'S MOTION FOR SUMMARY JUDGMENT**

---

KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800

Attorneys for *Plaintiff*
*Cellco Partnership d/b/a Verizon Wireless*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

COUNTER STATEMENT OF FACTS ................................................................................... 3

    I.     Verizon Will Be Subject to the Code if It Proceeds With Its Planned
          Installations ............................................................................................................ 3

    II.    The City Lacks Support for Its Supposed Cost Analysis to Justify Its Fees .......... 4

ARGUMENT ............................................................................................................................ 6

    I.     THE CITY CANNOT MEET ITS BURDEN TO DEMONSTRATE
          THAT ITS FEES ARE COST-BASED, AS REQUIRED BY FEDERAL
          LAW .......................................................................................................................... 6

          A.     The Spreadsheet Is Inadmissible .............................................................. 8

    II.    THE CITY CANNOT MOUNT A COLLATERAL CHALLENGE TO
          THE VALIDITY OF THE BARRIERS ORDER IN THIS LITIGATION ......... 10

          A.     The Court May Not Consider a Collateral Challenge to the Barriers
                  Order ......................................................................................................... 11

          B.     The Barriers Order Is a Reasonable Exercise of the FCC'S
                  Authority and Supported by Substantial Evidence ................................... 13

    III.   THE BARRIERS ORDER'S COST-BASED STANDARD APPLIES TO
          THE ENTIRETY OF VERIZON'S CHALLENGE, INCLUDING FIBER
          FEES ........................................................................................................................ 15

    IV.   THE CITY BEARS THE BURDEN OF ESTABLISHING THE COST
          BASIS OF ITS FEES UNDER THE BARRIERS ORDER ............................... 18

    V.    VERIZON HAS A CAUSE OF ACTION FOR DECLARATORY AND
          INJUNCTIVE RELIEF ........................................................................................... 19

    VI.   VERIZON HAS STANDING AND ITS CLAIMS ARE RIPE .......................... 22

CONCLUSION ........................................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Armstrong v. Exceptional Child Center, Inc.*,
  575 U.S. 320 (2015)..................................................................................................21

*Bach v. Pataki*,
  408 F.3d 75 (2d Cir. 2005), *overruled on other grounds*, *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ..............................................................................23

*Barnhart v. Thomas*,
  540 U.S. 20 (2003)....................................................................................................14

*BellSouth Telecomm., Inc. v. Town of Palm Beach*,
  252 F.3d 1169 (11th Cir. 2001) ...............................................................................20

*Biestek v. Berryhill*,
  139 S. Ct. 1148 (2019)..............................................................................................14

*Cellco P'ship v. City of Rochester*,
  473 F. Supp. 3d 268 (W.D.N.Y. 2020) ...............................................................23-25

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council*,
  467 U.S. 837 (1984)..................................................................................................14

*City of Austin v. Abbott*,
  385 F. Supp. 3d 537 (W.D. Tex. 2019)....................................................................21

*City of Portland v. United States*,
  969 F.3d 1020 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2855 (2021)............. *passim*

*Clomon v. Jackson*,
  988 F.2d 1314 (2d Cir. 1993)....................................................................................22

*CNSP, Inc. v. Webber*,
  No. CV 17-0355 KG/SCY, 2020 WL 2745456 (D.N.M. May 27, 2020)...............21

*Coastal Communications Service v. City of New York*,
  658 F. Supp. 2d 425 (E.D.N.Y. 2009) ....................................................................20

*Crown Castle NG E. LLC v. Town of Oyster Bay*,
  No. 17CV3445SJFARL, 2020 WL 4587653 (E.D.N.Y. Feb. 21, 2020) ................19

*Daniels v. Union Pac. R.R.*,
  530 F.3d 936 (D.C. Cir. 2008)..................................................................................13

*In re F.C.C.*,
   217 F.3d 125 (2d Cir. 2000)..................................................................................11, 12

*Friends of E. Hampton Airport v. Town of E. Hampton*,
   841 F. 3d 133 (2d Cir. 2016)..........................................................................................20

*Giles v. Rhodes.*
   No. 94 Civ. 6385, 2000 WL 1425046 (S.D.N.Y. Sept. 27, 2000)...............................8

*Gorss Motels, Inc. v. Otis Elevator Co.*,
   No. 3:16-CV-1781 (KAD), 2019 WL 1490102 (D. Conn. Apr. 4, 2019)...............12

*Indiana Rail Rd. Co. v. Illinois Com. Comm'n*,
   491 F. Supp. 3d 344 (N.D. Ill. 2020)...........................................................................13

*Johnson v. City of Shelby, Miss.*,
   574 U.S. 10 (2014)...........................................................................................................22

*King v. Time Warner*,
   894 F.3d 473 (2d Cir. 2018)....................................................................................11, 12

*Leyse v. Clear Channel Broad., Inc.*,
   545 F. App'x 444 (6th Cir. 2013), *cert. denied*, 574 U.S. 815 (2014)...................13

*Mais v. Gulf Coast Collection Bureau, Inc.*,
   768 F.3d 1110 (11th Cir. 2014) ....................................................................................12

*Murphy v. DCI Biologicals Orlando, LLC*,
   797 F.3d 1302 (11th Cir. 2015) ....................................................................................12

*Nack v. Walburg*,
   715 F.3d 680 (8th Cir. 2013), *cert. denied*, 572 U.S. 1028 (2014)..........................13

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
   545 U.S. 967 (2005).........................................................................................................14

*Nextel Partners, Inc. v. Town of Amherst, N.Y.*,
   251 F. Supp. 2d 1187 (W.D.N.Y. 2003) .......................................................................7

*NextG Networks of NY, Inc. v. City of New York*,
   513 F.3d 49 (2d Cir. 2008)............................................................................................20

*Pac. Capital Bank, N.A. v. Connecticut*,
   542 F.3d 341 (2d Cir. 2008)..........................................................................................23

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
   139 S. Ct. 2051 (2019)....................................................................................................13

*Prayze FM v. F.C.C.*,

214 F.3d 245 (2d Cir. 2000)......................................................................................13

*Sacerdote v. Cammack Larhette Advisors, LLC,*
939 F.3d 498 (2d Cir. 2019)....................................................................................13

*Sackin v. TransPerfect Global, Inc.,*
278 F. Supp. 3d 739 (S.D.N.Y. 2017).....................................................................25

*Santino v. NCO Fin. Sys., Inc.,*
No. 09-CV-982-JTC, 2011 WL 754874 (W.D.N.Y. Feb. 24, 2011) ........................12

*Smith v. Meese,*
821 F. 2d 1484 (11th Cir. 1987) ..............................................................................22

*TCG Detroit v. City of Dearborn,*
206 F. 3d 618 (6th Cir. 2000) ..................................................................................20

*TCG New York, Inc. v. City of White Plains,*
305 F.3d 67 (2d Cir. 2002)......................................................................................16

*United States Sec. & Exch. Comm'n v. Alpine Secs. Corp.,*
354 F. Supp. 3d 396 (S.D.N.Y. 2018)........................................................................8

*United States v. Any & All Radio Station Transmission Equip.,*
207 F.3d 458 (8th Cir. 2000) .............................................................................11, 12

*United States v. Dunifer,*
219 F.3d 1004 (9th Cir. 2000) .................................................................................12

*US v. Feliz,*
467 F.3d 227 (2d Cir. 2006)......................................................................................8

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,*
535 U.S. 635 (2002)................................................................................................21

*Wilson v. Quest Diagnostics Inc.,*
No. CV 2:18-11960, 2019 WL 4169012 (D.N.J. Sept. 3, 2019) ............................13

**Statutes**

28 U.S.C. § 2342(1) ....................................................................................................11

47 U.S.C. § 402(a) ...................................................................................................3, 11

**Other Authorities**

31 Wright & Miller, *Federal Practice & Procedure: Evid.* § 8045
(1st ed. 2021) ...........................................................................................................8

*Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*,
33 FCC Red 9088 (2018) ................................................................................ *passim*

Fed. R. Evid. 801 .................................................................................................8

Fed. R. Evid. 1006 ...............................................................................................8

*In the Matter of Petition for Declaratory Ruling That Clark County, Nevada Ordinance No.4659 Is Unlawful Under Section 253 of the Communications Act As Interpreted by the FCC & Is Preempted*,
No. DA21-59, 2021 WL 228002 (OHMSV Jan. 14, 2021)......................................18

## PRELIMINARY STATEMENT

In a reflection of the lack of merit in its position, the City of Rochester (the "City") devotes just one paragraph of its summary judgment brief to the central issue in this litigation: whether the City has met its burden of demonstrating that the challenged telecommunications fees are cost-based, as Section 253 of the Telecommunications Act and the FCC's *Barriers Order*[1] require. Even in that lone paragraph, the City does not seriously attempt to argue that its fees comply with federal law. Nor could it. The City's Telecommunications Code ("Code") states on its face that the challenged fees are designed to recover the "value" of the City's right-of-way ("ROW")—not just the City's costs—and the evidence in the record, including unrebutted expert testimony, confirms that those fees are not cost-based.

The City relies on a so-called "costs spreadsheet" (the "Spreadsheet")—which is unsupported and inadmissible—and the deposition testimony of the City employee who created it (Louie Tobias) to suggest that the challenged fees are cost-based. (Dkt. 57-10 at 24-25.) But not even the City appears to believe that. Cellco Partnership d/b/a Verizon Wireless ("Verizon") submitted an expert report (App. Ex.[2] A) detailing the many ways in which the Spreadsheet is flawed, unreliable, and fails to demonstrate that the City's fees are based on the objectively reasonable costs caused by the deployment of telecommunications facilities in the municipal ROW, as they must be under federal law. *Barriers Order* ¶¶ 50, 79, 80, n.131, n.233. In two related cases before the Court, three more experts submitted two reports examining the same

---

[1] *In re Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd 9088, ¶¶ 50, 79, 80, n.131, n.233 (2018) (under Section 253, municipal fees must reflect a reasonable approximation of objectively reasonable costs caused by the deployment of telecom facilities in the rights-of-way).

[2] "App. Ex." refers to the exhibits attached to Verizon's Appendix to Local Rule 56.1 Statement of Additional Material Facts, submitted herewith.

Spreadsheet and reaching the same conclusions.[3]  Tellingly, the City did not bother to depose any of those experts or submit its own expert report challenging their conclusions.  Instead, the City chose to leave unrebutted the expert testimony unanimously demonstrating that the City's only purported basis for claiming its fees are cost-based—the Spreadsheet—does not in fact support that claim.

Lest there be any doubt, the City employee who created the Spreadsheet, Mr. Tobias, confirmed in his deposition that, among other things: (i) the City does not track its actual costs associated with telecom installations in the ROW; (ii) the Spreadsheet is based on oral conversations with unidentified City employees, and he has no notes or other records of those conversations; (iii) he has no records, work papers, or other supporting documents to substantiate his methodology or the figures in the Spreadsheet; (iv) the Spreadsheet merely allocated estimated costs the City already incurs (largely employee salaries), instead of attempting to capture the costs caused by telecom deployments; (v) the Spreadsheet fails to distinguish recurring costs from one-time costs; and (vi) the City would incur those costs regardless of whether Verizon (or any other entity) deployed facilities within municipal ROW.  (SOF[4] ¶¶ 72-73, 75-79, 86, 90-142.)  Given these admissions, it is unsurprising that the City does not seriously attempt to argue that the challenged fees are cost-based or that they comply with the governing federal law.

Instead, the City urges the Court not to apply the governing federal law.  The City throws a hodgepodge of procedural arguments at the wall, hoping that one will stick and the City will be able to escape having the Court reach the merits.  But none of those procedural gambits has any

---

[3]     *See* Report, *Crown Castle Fiber LLC v. City of Rochester*, No. 6:20-cv-06866-EAW-MWP (W.D.N.Y.) (the "*Crown Castle Action*"), Dkt. 26-29; Report, *ExteNet Sys., Inc. v. City of Rochester*, No. 6:20-cv-07129-EAW-MWP (W.D.N.Y.) (the "*ExteNet Action*," and together the "*Related Actions*"), Dkt. 30-25.

[4]     "SOF" refers to Verizon's Statement of Additional Facts, submitted herewith.

basis.  Indeed, the Court already has rejected a number of them; the rest are little more than Hail Marys.  So, faced with the reality that it cannot satisfy existing federal law, the City ultimately argues that this Court should *change that governing law* and adopt a new standard that the City can meet.  The Court cannot do so under the Hobbs Act, 47 U.S.C. § 402(a).  Nor should it do so when the result would be squarely at odds with the clear intent of Congress and the FCC to remove barriers to the deployment of telecommunications infrastructure.

As explained in more detail below and for the reasons set forth in Verizon's own motion for summary judgment (Dkt. 58-1), the Court should deny the City's motion and enter summary judgment in favor of Verizon.

## COUNTER STATEMENT OF FACTS[5]

## I.      Verizon Will Be Subject to the Code if It Proceeds With Its Planned Installations

It is undisputed that Verizon and/or its affiliates have had telecommunications facilities installed in the City ROW since before the filing of this action.  (App. Ex. G at ¶¶ 16-17.)  It is also undisputed that, both before and after the City enacted the Code, Verizon has sought to upgrade and densify its network in and around Rochester.  For example, before the Code was enacted, Verizon developed plans for numerous installations and presented those plans to the City, including the proposed location of over 500 small cells.  (*Id.* at ¶¶ 5-6.)  Upon learning of the fees the City proposed to charge in the Code, Verizon petitioned the City not to enact the Code.  (*Id.* at ¶ 7.)  After the Code was enacted, Verizon advised the City that it was still eager to deploy facilities, but the Code was affecting Verizon's ability to do so.  (*Id.* at ¶¶ 9-10.)  The City, in turn,

---

[5]      Verizon sets forth here a concise summary of relevant facts.  For a fuller recitation of facts dispositive of both the parties' motions, Verizon incorporates and respectfully refers the Court to its accompanying response to the City's Local Rule 56 statement of facts and statement of additional material facts, as well as the factual background and Local Rule 56 statement of facts submitted with Verizon's own motion for summary judgment. (Dkts. 58-1 at 2-12, 58-2.)

advised that Verizon's time to comply with the Code was "fast approaching" and that Verizon would have to pay fees and comply with the Code.  (*Id.* at ¶¶ 10-11; Dkt. 3 at 9.)

Verizon brought this action to remove the Code's barriers to Verizon's plans.  (Dkt. 1.) Verizon still intends to upgrade and densify its network in Rochester, and has had to place several projects on hold, pending resolution of this action.  (App. Ex. G. at ¶ 15.)  Verizon operates in an ultra-competitive industry, and that industry is in a particularly critical time as next-generation wireless services are being deployed.  (*Id.* at ¶ 12.)  The City does not dispute that Verizon's planned deployments would be subject to the Code.

## II.    The City Lacks Support for Its Supposed Cost Analysis to Justify Its Fees

The City relies on the two-tabbed MS Excel Spreadsheet purporting to represent an "analysis" of the City's "costs."  (SOF ¶ 63.)  The Spreadsheet was created for litigation purposes (*id.* ¶¶ 69-71) *after* the City adopted the Code (*id.* ¶¶ 66, 69-70).  It lists numerous tasks, categorized by City department, that purportedly relate to small cells and backhaul facilities, or telecommunications in general.  (*Id.* ¶¶ 72, 76.)  The Spreadsheet does not attempt to identify actual costs, or costs that are actually caused by any such deployments.  Rather, for each task, the Spreadsheet allocates a fraction of time for existing full-time City employees, or full time equivalency ("FTE").  (*Id.* ¶ 73.)  The FTE is multiplied by the approximate annual salary for those employees in order to approximate the "cost" to the City for each task.  (*Id.*)  The Spreadsheet then allocates those FTE percentages between small cell attachments and fiber backhaul using an unidentified and unexplained ratio that varies from task to task.  (*Id.* ¶¶ 73, 77-78.)  For fiber backhaul facilities only (the second tab), the Spreadsheet also allocates varying percentages of existing and planned capital costs (*id.* ¶ 80), including for projects where the costs are not caused by (or apparently even related to) the management or use of telecommunications facilities (*id.* ¶¶ 80, 158; App. Ex. A at Ex. A ¶ 60).

There have been small cell installations in the City, but the City did not track any of its actual costs associated with these small cell installations. (SOF ¶¶ 66, 90.) Rather, the Spreadsheet includes estimates, based on assumptions Mr. Tobias made following informal, undocumented conversations with an unidentified "representative sample" of City employees as to how much time is spent on any given task. (*Id.* ¶¶ 91, 94, 96.) But City employees do not track their time in the normal course of business. (*Id.* ¶ 100). The City has no backup for, or notes related to, those conversations between Mr. Tobias and other City employees, and otherwise has no backup worksheets, notes, or other documents to support the figures in the Spreadsheet. (*Id.* ¶¶ 96-99.)

Mr. Tobias admitted that the costs assumed in the Spreadsheet would not be changed by the amount of facilities installed in the ROW, and that the Spreadsheet does not measure incremental costs that would only occur as a result of the small cell installations.[6] (*Id.* ¶¶ 115-17.) Rather, he admits that, even if there were no small cell attachments in the City, neither the salaries that formed the basis for the amounts reflected in the Spreadsheet nor the City's overall budget would be reduced. (*Id.* ¶¶ 116-17.) In other words, the City's designee confirmed that the City would incur these same costs regardless of whether any entity deployed facilities in the ROW.

The Spreadsheet also erroneously treats all of these "costs" as recurring. (*Id.* ¶¶ 64, 109.) But the City did not determine which costs are actually recurring (*id.* ¶¶ 106-07), and the City's records reflect that most, if not all, of the costs are non-recurring (*id.* ¶¶ 108-09).

Ultimately, the only purported "quality control" that Mr. Tobias employed was to use his "common sense" and "smell test" to assess whether the estimates that he came up with were "reasonable." (*Id.* ¶¶ 104-05.) But, as set forth in the unrebutted expert report of economist and

---

[6]     "Incremental" means "the additional costs caused by a change in activity." (SOF ¶ 113.) Such costs are often referred to as "differential costs" "because they rep-resent the difference between total expenditures with and without a change in activity," or "avoidable costs" because the entity would not incur these costs but-for the change in activity." (*Id.* ¶ 114.)

telecommunications expert Chris Dippon (as well as the expert reports submitted in the *Related Actions*), the Spreadsheet's conclusions are facially unreasonable.  For example, the Spreadsheet suggests that 1,118 City employees from 15 departments must work a total of 49,805 hours per year, which would be equal to 192 hours per day, on tasks related to small wireless and fiber backhaul facilities.  (*Id.* ¶ 74.)  Those figures are so far beyond anything reasonable that they should be rejected out of hand.  Moreover, adding to the absurdity of those numbers is the fact that, according the City, this alleged level of effort and the costs associated with it do not change whether there is a single small cell installation or thousands.  (*Id.* ¶¶ 75-76, 116-17).

## ARGUMENT

The Court should deny the City's motion because the City has failed to meet its burden of demonstrating that its fees comply with federal law.  The undisputed evidence confirms that the challenged fees violate Section 253 and the *Barriers Order*.  None of the City's series of fallback procedural arguments change the outcome, because none have any merit.

## I.   THE CITY CANNOT MEET ITS BURDEN TO DEMONSTRATE THAT ITS FEES ARE COST-BASED, AS REQUIRED BY FEDERAL LAW

As Verizon explained in its motion for summary judgment (Dkt. 58-1), Section 253 precludes and preempts localities from action that prohibits or effectively prohibits carriers like Verizon from providing service.  One of the ways in which a locality can prohibit or effectively prohibit service under Section 253 is by charging fees that are above cost or discriminatory for attaching telecommunications facilities to municipal infrastructure or within the municipal ROW.  *City of Portland v. United States*, 969 F.3d 1020, 1036-38 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2855 (2021).  But the City treats this central, dispositive issue as an afterthought.  The City argues in a single paragraph at the end of its brief that the challenged fees are "saved by § 253(c) because they constitute reasonable compensation."  (Dkt. 57-10 at 24.)  As the FCC recognized in the

*Barriers Order*, however, a locality's fees do not constitute reasonable compensation under Section 253 if they are not cost-based, unless, as it pertains to small cell fees, they fall below a specified presumptively reasonable rate.

It is undisputed that the City's fees far exceed the presumptively reasonable rates.[7] Therefore, the City bears the burden of demonstrating that all of its fees are a reasonable approximation of its objectively reasonable costs caused by the deployment of the telecom facilities. *See Barriers Order* ¶¶ 56, 76; *see also id.* ¶¶ 79-80, n.234; *City of Portland*, 969 F.3d at 1037. The City has not and cannot do so.[8] Indeed, the City's claim that the fees are cost-based is contradicted by the language of the Code itself, which states on its face that the fees were set at least in part based on "the value of the right of way and the municipal facilities." (SOF ¶ 45 (Code at § 106-15(B)).) Those fees therefore expressly were not limited to the City's costs. In fact, the City candidly admits it made no attempt to ascertain its actual costs prior to (or even since) enacting the Code (SOF ¶ 66.) That alone is sufficient to preempt the challenged fees.

The only evidence cited by the City to meet its burden is the Spreadsheet created by Mr. Tobias. That Spreadsheet, however, was created for litigation purposes *after* the Code was

---

[7]     Although the Code's fees specific to small cell attachments and permits exceed the presumptively reasonable rates on their own, the Code's ROW fees in general are largely duplicative—exacerbating the extent to which they exceed the presumptively reasonable rate and costs. (*See* Verizon's Response to the City's Local Rule 56 Statement of Facts at ¶¶ 12-13; *Compare* App. Ex. P (Code) at § 104-57 (imposing permit fees), *with id.* at § 106-15(A) (registration fees); *Compare id.* at § 106-15(B)(1) (fees relating to underground installations), *with id.* at § 104-57(H) (excavation fees); *Compare id.* at § 104-57(B) (annual maintenance fee), *with id.* at § Section 104-20 (15-year extended maintenance fees, in addition to permit fees, for excavations made in newly reconstructed or newly resurfaced pavement).)

[8]     The City also cannot establish that its fees are nondiscriminatory. The Code imposes fees on wireless installations located on poles, but applies no comparable fees for wireless antennas mounted on other structures. See Code § 106-15(B)(4). Similarly, the Code imposes differing fee amounts depending on whether a provider has 1 to 2,500, 2,500 to 12,500, or more than 12,500 feet of facilities. *Id.* § 106-15(B)(1)-(2). But the City's purported cost analysis made no attempt whatsoever to quantify differing costs based on differing lengths of deployment to justify treating providers differently on this basis. This fee structure is therefore discriminatory. *See Nextel Partners, Inc. v. Town of Amherst, N.Y.*, 251 F. Supp. 2d 1187, 1195 (W.D.N.Y. 2003).

adopted.  (SOF ¶ 66.)  Given that timing, the Spreadsheet did not and could not form the basis for the fees contained in the Code.  Such a *post hoc* analysis is insufficient for the City to meet its burden.  It is also inadmissible for multiple reasons, rife with errors, fundamentally flawed, and wholly insufficient to show what the City's costs were, are, or will be.

### A.    The Spreadsheet Is Inadmissible

As Verizon explained in its moving brief, the Spreadsheet is inadmissible because it is hearsay and an otherwise deficient summary document.  (Dkt. 58-1 at 17-20).  It is an out of court statement being offered to prove the truth asserted—that the listed amounts are a reasonable approximation of the City's actual costs—based on undocumented, out-of-court statements by unidentified employees, outside the regular course of the City's business activities and in anticipation of litigation.  (SOF ¶¶ 69-71, 96-94, 100 ); *see* Fed. R. Evid. 801; *see also, e.g.*, *Giles v. Rhodes.* No. 94 Civ. 6385, 2000 WL 1425046, at *8-9 (S.D.N.Y. Sept. 27, 2000) (hearsay); *US v. Feliz*, 467 F.3d 227 (2d Cir. 2006) (outside regular course).  It also purports to summarize data, but that underlying data has not (and cannot be) made available, and in any event the City cannot establish that the unavailable data represents competent and admissible evidence.  *See* Fed. R. Evid. 1006; *see also, e.g.*, *United States Sec. & Exch. Comm'n v. Alpine Secs. Corp.*, 354 F. Supp. 3d 396, 419 (S.D.N.Y. 2018); 31 Wright & Miller, *Federal Practice & Procedure: Evid.* § 8045 (1st ed. 2021).  Thus, the Spreadsheet cannot be considered by the Court, leaving the City without any evidence to meet its burden of establishing the cost basis of its fees.  The Court should deny the City's motion for summary judgment (and grant Verizon's motion) on this basis alone.

### A.  The Spreadsheet Is Fundamentally Flawed

Between this action and the two *Related Actions*, four different experts have submitted three reports detailing the myriad ways in which the Spreadsheet is unsupported, unreliable, derived from an improper methodology, riddled with errors and, ultimately, was not intended to

and does not show what the City suggests it does—*i.e.*, that the challenged fees are cost-based. (App. Exs. A, EE; *Crown Castle Action*, Dkt. 26-29.)  The City declined to depose any of those experts, has not submitted an expert report on its own behalf to counter their conclusions, or otherwise even attempted to defend the Spreadsheet in any way.  That should tell the Court all it needs to know about the viability of the Spreadsheet and what that means for the City's claim that its fees are cost-based.

Verizon nevertheless has gone into greater detail regarding the Spreadsheet's deficiencies in its own summary judgment brief and incorporates that discussion herein.  (*See* Dkt. 58-1 at 20-29.)  So have the plaintiffs in the *Related Actions*.  *See Crown Castle Action*, Dkt. 26-1 at 14-25, 28-29; *ExteNet Action*, Dkt. 30-1 at 20-29.  In summary, the Court should reject the City's claim that the Spreadsheet shows that the challenged fees are based on the objectively reasonable costs caused by telecom deployments for at least the following reasons.

***The Spreadsheet Is Unreliable.***  The City provided literally no supporting documentation for the Spreadsheet.  The Spreadsheet was based only on Mr. Tobias's informal, undocumented conversations with a "representative sample" of City employees.  (SOF ¶¶ 91, 94.)  But there is no way to test the accuracy of that information because Mr. Tobias did not keep any records of those conversations, the people he spoke to, or any other backup documentation or notes (*id.* ¶¶ 95-96), and the City otherwise does not maintain any documentation of how its employees allocated their time among various tasks (*id.* ¶ 93).

***The Spreadsheet Does Not Show Actual Costs.***  The *Barriers Order* requires that fees be based on "actual" costs incurred by the locality.  *Barriers Order* ¶ 32.  But the City admits that it does not track its actual costs (even though it has telecommunications facilities installed throughout the City) and therefore the Spreadsheet cannot possibly be an approximation of such

costs.  (SOF ¶ 90.)

***The Spreadsheet Does Not Show Incremental Costs Specifically Caused by the Deployment***.  The cost estimates in the Spreadsheet are not intended to and do not reflect the "costs specifically related to and caused by the deployment," as required by federal law.  *Barriers Order* ¶ 50, n.131.  Mr. Tobias admitted that the Spreadsheet does not show the City's incremental costs. (SOF ¶ 115.)  Instead, the Spreadsheet attempts to estimate costs by allocating existing personnel and other costs that the City already incurs—regardless of whether or how many telecom deployments occur.  (*Id.* ¶¶ 116-17.)  Those costs are plainly not caused by the deployment.

***The Spreadsheet Over-Counts by Mixing One-Time and Recurring Costs.***  The Spreadsheet indiscriminately mixes recurring and non-recurring estimated costs (*Id.* ¶ 106), treating all activities as if they recur each year, despite the fact that City records indicate the opposite—*i.e.*, that many City tasks (such as permitting) only occur once, on the front-end, prior to installation (*id.* ¶ 108).  This results in the City over-counting its purported costs to recover for the same one-time activities over and over again.

***The Claimed Costs Are Not Reasonable.***  The Spreadsheet suggests that 1,118 City employees from 15 departments must work a total of 49,805 hours per year—equal to 192 hours per day—on tasks related to small wireless and fiber backhaul facilities.  (*Id.* ¶ 74.)  That is facially absurd, unsupported by evidence, and deemed unreasonable by an expert.  (*See* App. Ex. A.)

Because of these fatal defects in the Spreadsheet, the City cannot meet its burden and its motion must be denied (and Verizon's motion granted).

## II.   THE CITY CANNOT MOUNT A COLLATERAL CHALLENGE TO THE VALIDITY OF THE BARRIERS ORDER IN THIS LITIGATION

Faced with the inescapable conclusion that its challenged fees violate existing federal law, the City argues that the Court should change that law.  Specifically, the City seeks to avoid the

cost-based standard recognized in the *Barriers Order* by arguing that the order itself "should be rejected by the Court."  (Dkt. 57-10 at 19.)  The Court, however, has no jurisdiction to discard the *Barriers Order.*  Even if the Court could consider the City's challenges (which already have been rejected by the Ninth Circuit and declined review by the Supreme Court), the Court should uphold the *Barriers Order* (and the preexisting precedent applying a cost-based standard under Section 253) and apply it to this case.

### A.    The Court May Not Consider a Collateral Challenge to the *Barriers Order*

Challenges to FCC orders "shall be brought" under the Hobbs Act.  47 U.S.C. § 402(a).  The Hobbs Act, in turn, reserves exclusive jurisdiction to the appropriate court of appeals.  28 U.S.C. § 2342(1).  "It is hard to think of clearer language confining the review of regulations to the Courts of Appeal."  *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 463 (8th Cir. 2000).

Here, the *Barriers Order* was challenged under the Hobbs Act in consolidated proceedings before the Ninth Circuit, which affirmed the order as a proper exercise of the FCC's authority to implement Section 253.  *See City of Portland*, 969 F.3d at 1037-39.  The Supreme Court denied certiorari.  *City of Portland*, 141 S. Ct. 2855.  The Ninth Circuit's ruling, like the *Barriers Order*, is now binding nationwide, as decisions from the Second Circuit and this Court have recognized.  *See King v. Time Warner*, 894 F.3d 473, 476 n.3 (2d Cir. 2018) (recognizing court of appeal was sole forum for challenges and applying the resulting decision); *In re F.C.C.*, 217 F.3d 125, 139-40 (2d Cir. 2000) (exclusive Hobbs Act appellate review precludes collateral and defensive challenges); *Gorss Motels, Inc. v. Otis Elevator Co.*, No. 3:16-CV-1781 (KAD), 2019 WL 1490102, at *4 (D. Conn. Apr. 4, 2019) ("[U]nder the [Second Circuit's] *King* analysis, the D.C. Circuit's decision is binding on this Court"); *Santino v. NCO Fin. Sys., Inc.*, No. 09-CV-982-JTC, 2011 WL 754874, at *6 (W.D.N.Y. Feb. 24, 2011) ("this court is without jurisdiction" to invalidate

FCC order).

It makes no difference that the City seeks to attack the validity of the *Barriers Order* as a defense in this action, rather than through a separate action, because, "[b]y its terms, the [Hobbs] Act's jurisdictional limitations apply as much as to affirmative defenses as to offensive claims." *United States v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000). The Second Circuit has applied this common sense conclusion, explaining that the relevant statutory provisions are "broadly phrased" and "[t]his exclusivity extends as well to collateral attacks"—including "[a] defensive attack." *In re F.C.C.*, 217 F.3d at 139-40. In fact, the defendant in *King* made the same argument advanced by the City here—*i.e.*, that the Hobbs Act did not preclude its as-applied challenge. *See* Brief, *King v. Time Warner Cable, Inc.*, No. 15-2474 at 38-39, 2016 WL 3752453, *38-39 (2d. Cir. July 7, 2016), Dkt. 96. The Second Circuit rejected that argument by holding the appeal in abeyance pending completion of the Hobbs Act review process and then applying the decision of the D.C. Circuit. *See King*, 894 F.3d at 476 n.3; *see also Gorss Motels, Inc.*, 2019 WL 1490102 at *4 (explaining *King* analysis dictates that Hobbs Act appellate review is exclusive and binding). In short, "[w]hichever way it is done, to ask the district court to decide whether the regulations are valid violates the statutory requirements." *Any & All Radio Station Transmission Equip.*, 207 F.3d at 463.[9]

The City's citation to *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051 (2019), is unavailing.[10] As other courts have held, the City "cannot place much reliance

---

[9]     *See also*, *e.g.*, *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119-21 (11th Cir. 2014) (holding that the district court lacked jurisdiction to enjoin, set aside, annul, or suspend prior FCC ruling); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302 (11th Cir. 2015) (holding that the District Court lacked jurisdiction under Hobbs Act to review FCC's interpretation of statute); *Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 459 (6th Cir. 2013), *cert. denied*, 574 U.S. 815 (2014); *Nack v. Walburg*, 715 F.3d 680, 685-87 (8th Cir. 2013), *cert. denied*, 572 U.S. 1028 (2014); *Daniels v. Union Pac. R.R.*, 530 F.3d 936, 940-41 (D.C. Cir. 2008).

[10]     *Prayze FM v. F.C.C.*, 214 F.3d 245 (2d Cir. 2000), is also inapposite. It concerned Section

on the opinion, because all it did was remand the case to the lower courts in order to address two 'preliminary issues.'" *Indiana Rail Rd. Co. v. Illinois Com. Comm'n*, 491 F. Supp. 3d 344, 350 (N.D. Ill. 2020) (quoting *PDR Network*, 139 S. Ct. at 2053).  It did not change the law.  *Wilson v. Quest Diagnostics Inc.*, No. CV 2:18-11960, 2019 WL 4169012, at *1-2 (D.N.J. Sept. 3, 2019). And neither of the "preliminary issues" in *PDR Network* helps the City here because the *Barriers Order* is a legislative rule and the City had a prior and adequate opportunity to participate in the Hobbs Act challenge.  *PDR Network*, 139 S. Ct. at 2055-56.  The City does not argue otherwise.[11]

Indeed, *Indiana Rail Road* is particularly instructive on this point.  There, the defendants, as the City does here, claimed that *PDR Network* supported their argument that the court could consider an as-applied challenge to an agency order.  491 F. Supp. 3d at 349.  The court rejected that invitation, finding that the order at issue was legislative, and the defendants did not argue they lacked a prior and adequate opportunity.  *Id.* at 349-50.  Accordingly, the court held that the Hobbs Act prevents courts from considering such challenges.  *Id.*  The same conclusion applies here.

**B.    The *Barriers Order* Is a Reasonable Exercise of the FCC'S Authority and Supported by Substantial Evidence**

Even if the City were permitted to challenge the *Barriers Order* here, this Court should uphold it for the same reasons the Ninth Circuit did—the City's arguments lack merit—and there is nothing in the record in this proceeding that could support a different conclusion.[12]

---

504 of the Communications Act and *in rem* forfeiture suits.

[11]    The City was well aware of both the FCC and Hobbs Act proceedings and it participated in both either directly or through its membership in the National League of Cities, raising the same challenges it now seeks to raise again.  *See* App. Ex. M (City filing with FCC); *Barriers Order* at App'x B (identifying National League of Cities as participant); *City of Portland*, 969 F.3d 1020 (identifying National League of Cities as party); Petitions, *City of Portland*, No. 18-72689 (9th Cir.), Dkt.  174 at 2, 23 (identifying National League of Cities as petitioner); *id.* at 5, 8-13 (raising same arguments City raises here).  Indeed, the City should also be estopped from re-litigating the arguments that were already litigated on its behalf by the National League of Cities.  *See Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 506, 509 (2d Cir. 2019).

[12]    The City does not seek summary judgment on its affirmative defense that the *Barriers*

Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837 (1984), courts defer to an implementing agency's reasonable construction where the statute at issue is silent or ambiguous. *Barnhart v. Thomas,* 540 U.S. 20, 26 (2003). Courts must "accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 980 (2005). Factual findings are reviewed for substantial evidence—*i.e.*, "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The City's cursory assertion that Section 253 is clear and unambiguous (and contrary to how it is was interpreted in the *Barriers Order*) is offered without support. (Dkt. 57-10 at 22.) Indeed, even the dissenting opinion in *City of Portland*—on which the City relies exclusively—did not treat the statute as unambiguous. *See City of Portland*, 969 F.3d at 1053 (Bress, J. dissenting) (noting the statute "does not define what it means for a local policy to 'have the effect of prohibiting' service").

The City argues that the *Barriers Order* is irrational because cities facing high costs can charge higher cost-based fees than cities facing lower costs. (Dkt. 57-10 at 23-24.) This argument is based on the dissenting opinion in *City of Portland* which, as is the nature of a dissent, does not represent the prevailing view. The majority correctly explained that the FCC concluded that a cost-based approach was appropriate by looking at the aggregate impact of fees to avoid the very analysis the City advocates:

> The FCC did not base its fee structure on a determination that there was a relationship between particular cities' fees and prohibition of services. The FCC instead found that above-cost fees, in the aggregate, were having a prohibitive effect on a national basis. . . . . Local Government Petitioners are implicitly suggesting an alternative approach that would require an examination of the

---

*Order* is unconstitutional, a claim that also was rejected in *City of Portland*. 969 F.3d at 1049.

> prohibitive effect of fees in each of the 89,000 state and local governments under the FCC's jurisdiction, a nearly impossible administrative undertaking.  Local Government Petitioners do not contend that this is required by statute, nor do they offer any other workable standard.

*Id.* at 1038; *Barriers Order* ¶ 53 (explaining "even fees that might seem small in isolation have material and prohibitive effects on deployment, particularly when considered in the aggregate").

Thus, in enacting the cost-based standard, the FCC found that "a standard lacking a cost anchor would 'have left providers entirely at the mercy of effectively unconstrained requirements of state or local governments.'"  *City of Portland*, 969 F.3d at 1039 (quoting *Barriers Order* ¶ 74).  The FCC considered a voluminous record—far "more than a mere scintilla" of evidence—to support its factual conclusions regarding the prohibitive effect of above-cost fees.  *Id.* (quoting *Biestek*, 139 S. Ct. at 1154).  Moreover, the FCC adopted the cost-based standard because there was no administratively feasible alternative.  Agency orders easily satisfy *Chevron* where they "improve administrability."  *Id.* at 1037-38 (quoting *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011)).  For all these reasons, even if the Court could consider a challenge to the *Barriers Order* here (and it cannot), the challenge would have to be rejected and the City's motion denied.

## III.   THE *BARRIERS ORDER'S* COST-BASED STANDARD APPLIES TO THE ENTIRETY OF VERIZON'S CHALLENGE, INCLUDING FIBER FEES

In its next effort to at least partially excuse its failure to comply with the *Barriers Order*, the City argues that the *Barriers Order* only applies to small cell installations (and its challenged fees pertaining to those installations), but does not also apply to fiber installations.  (Dkt. 57 at 16-18.)  The City is wrong for several reasons.  (*See also* Dkt. 58-1 at 15-16.)

*First,* the City admits that fiber backhaul is a necessary and essential part of every small cell installation.  (SOF ¶¶ 6-7.)  Indeed, wireless calls travel from the caller's device to the nearest

small cell, which then passes the call through fiber facilities to a small cell or other facility closer to the called party.  (*See* Dkt. 1 ¶ 11; App. Ex. A at Ex. A ¶ 16; *Remarks of FCC Chairman Ajit Pai at the Inst. for Policy Innovation's Hatton W. Sumners Distinguished Lecture Series Irving, Texas*, 2017 WL 3953434, at *4 (Sept. 7, 2017) ("We are talking about hundreds of thousands, if not millions, of small cells. And those cells are going to need backhaul—that is, the fiber and other connections that carry wireless traffic from cells back into the core of the network.").)  In fact, in creating the Spreadsheet, Mr. Tobias testified that he put all supposed costs related to small cell installations in the first tab, including costs related to the fiber necessary to connect the small cells to the network.  (App. Ex. C at 287:12-290:5.)  He also testified that fiber is necessary in the installation of small cells.  (SOF ¶¶ 6-7.)  Thus, the same standard should apply to both.  Indeed, if fiber were not assessed on the same cost-based standard as small cells, then a municipality could simply shift all of its excessive non-cost-based fees to the fiber installations that accompany every small cell, thereby defeating the purpose of the *Barriers Order* and frustrating Congressional intent to encourage the deployment of 5G technology.  *See TCG New York, Inc. v. City of White Plains*, 305 F.3d 67, 77 (2d Cir. 2002) (all provisions of ordinance must be considered as a whole, explaining "a town could effectively prohibit telecommunications services through a combination of individually non-objectionable provisions").

*Second*, Section 253 does not distinguish between different types of telecommunications facilities and the Court should not adopt different standards that are not called for by the statutory text.  *See, e.g.*, *Barriers Order* ¶¶ 22, 24.  Nor does the *Barriers Order* itself suggest that a different standard should apply to different types of telecommunications facilities.  To the contrary, while the *Barriers Order* happened to be issued in the specific context of small cell deployment, the broader legal standards it referenced were not limited to small cells.  Before reaching certain small

cell-specific issues, the FCC more broadly "articulate[d] . . . the Commission's interpretation of Section 253(a)." *Id.* ¶¶ 46, 56. And the FCC relied on a body of case law adopting a cost based standard that (i) pre-dated small cell technology and (ii) often involved fiber installations. *See, e.g., Id.* ¶ 46 (discussing cases decided well before small cell technology); *id.* n.122 (citing *XO Missouri v. City of Maryland Heights*, 256 F. Supp. 2d 987, 993-95 (E.D. Mo. 2003) (where per linear foot fiber fee at issue, pegging analysis to cost-based standard and rejecting argument as irrelevant whether another locality charges the same or higher fees); *Bell Atl.-Maryland, Inc. v. Prince George's Cty., Md.*, 49 F. Supp. 2d 805, 817-18 (D. Md. 1999) (fees must be limited to recovery of costs "directly related to [a provider's] actual physical use of the [locality's] rights-of-way"), *vacated on other grounds*, 212 F.3d 863 (4th Cir. 2000)). Accordingly, there is no basis to suggest that the FCC's cost-based standard should be limited to just small cells.

*Third*, the FCC's reasoning applies equally to small cell and fiber fees. The FCC found that cost-based fees were supported by "consider[ing] the aggregate effects of fees imposed by individual localities, including, but not limited to, the potential limiting implications for a nationwide wireless network that reaches all Americans, which is among the key objectives of [Section 253]." *Id.* ¶ 62. The FCC also relied upon "the simple, logical premise, supported by the record, that state and local fees in one place of deployment necessarily have the effect of reducing the amount of capital that providers can use to deploy infrastructure elsewhere." *Id.* ¶ 60. Thus, the FCC concluded that fees beyond cost recovery in one locality "materially and improperly inhibit deployment that could have occurred elsewhere." *Id.* That notion applies as equally to fiber fees as it does to small cells. There is no principle limiting that reasoning to small cell fees.

*Finally*, the FCC found that an interpretation of Section 253 that did not consider the cumulative impact of fees "would exacerbate the digital divide by giving dense or wealthy states

and localities that might be most critical for a provider to serve the ability to leverage their unique position to extract fees for their own benefit at the expense of regional or national deployment by decreasing the deployment resources available for less wealthy or dense jurisdictions." *Id.* ¶ 63. Again, this is just as true for the installation of fiber as it is for small cells.

## IV.   THE CITY BEARS THE BURDEN OF ESTABLISHING THE COST BASIS OF ITS FEES UNDER THE BARRIERS ORDER

In yet another attempt to avoid the governing law, the City argues that even if the *Barriers Order* applies (which it does), Verizon bears the initial burden of demonstrating that the Code effectively prohibits the provision of services under Section 253(a) before the burden then shifts to the City to prove that the fees are saved by Section 253(c). (Dkt. 57-10 at 12-14.)  The *Barriers Order*, the Ninth Circuit, and subsequent FCC precedent all make clear the City is incorrect.

The *Barriers Order* noted that a municipality has the burden of demonstrating that its fees comply with Section 253.  The FCC was clear that  "[f]ees that cannot ultimately be *shown by a state or locality* to be a reasonable approximation of its costs . . . are not 'fair and reasonable compensation'" under Section 253(c) and, therefore, have the effect of prohibiting service under Section 253(a).  *Barriers Order* ¶¶ 56, 76 (emphasis added); *see also id.* ¶¶ 79-80, n.234.  The Ninth Circuit decision affirming the *Barriers Order* confirms that this burden rests with the City. *City of Portland*, 969 F.3d at 1037.   And, to avoid any confusion, the FCC subsequently reiterated in a separate order that this burden rests with the locality from the outset: "the locality, not the petitioner, has the burden of demonstrating … why fees above safe harbor levels should not be preempted" and "[t]his burden is met only to the extent that the state or locality has demonstrated that a fee that exceeds safe harbor levels meets" the standard set forth in the *Barriers Order*.  *In the Matter of Petition for Declaratory Ruling That Clark County, Nevada Ordinance No.4659 Is Unlawful Under Section 253 of the Communications Act As Interpreted by the FCC & Is*

*Preempted*, No. DA21-59, 2021 WL 228002, at ¶ 7 (OHMSV Jan. 14, 2021).

Here, it is undisputed that none of the fees at issue are within safe harbor levels. In fact, the $1500 per pole attachment recurring fee is over 5 times higher than the presumptive rate and there is no presumptively reasonable rate for fiber. Thus, the fees are preempted unless the City can prove that they are cost-based. As discussed above, the City has not made that showing.

Recognizing as much, the City argues that its argued-for burden shifting framework nevertheless should apply, citing to *Crown Castle NG E. LLC v. Town of Oyster Bay*, No. 17CV3445SJFARL, 2020 WL 4587653 (E.D.N.Y. Feb. 21, 2020). But that decision is inapposite; it has nothing to do with a challenge to municipal fees addressed by the *Barriers Order*. In fact, the decision does not even mention the *Barriers Order*. Rather, in *Oyster Bay*, "Plaintiff's claim pursuant to Section 253 . . . is that the Town has prohibited the provision of telecommunication services by issuing a moratorium that materially inhibited the deployment of wireless infrastructure." *Id.* at *12. The claim was dismissed because "Section 253 is a preemption statute that at its heart deals with laws themselves, not discretionary decisions made pursuant to those laws" and "Plaintiff has failed to demonstrate that the Town is seeking to enforce an unconstitutional ordinance, let alone any ordinance." *Id.* at *13-14. That is an entirely different kind of claim than the facial challenge to the ordinance at issue here and, thus, this decision has no relevance to the present case, which challenges municipal fees under the *Barriers Order*.[13]

## V.   VERIZON HAS A CAUSE OF ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF

The City argues that—regardless of whether the challenged fees violate federal law—the

---

[13]     Even if it were Verizon's burden to establish the lack of a cost-basis for the fees, which it is not, Verizon would have met that burden here. The undisputed record shows that the City does not incur any significant annual recurring costs because of the installation of telecom facilities (*see* SOF ¶¶ 108-09; App. Ex. A at Ex. A ¶¶ 64-66) and, thus, the fees charged in the Code are plainly not cost-based.

Complaint should be dismissed because "Section 253 does not provide a cause of action." (Dkt. 57-10 at 7-9.) Even if this were true,[14] a private cause of action under Section 253 is not needed for this action to proceed. The Second Circuit has held that "a private right of action is not required where a party seeks to enjoin the enforcement of a local rule or regulation on the ground that the regulation is preempted by federal law." *NextG Networks of NY, Inc. v. City of New York*, 513 F.3d 49, 53 n.4 (2d Cir. 2008). Indeed, "the Supreme Court has consistently recognized federal jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal orders alleged to violate federal law." *Friends of E. Hampton Airport v. Town of E. Hampton*, 841 F. 3d 133, 144 (2d Cir. 2016) (collecting cases). Independent of any specific statutory private right of action, a party "invokes equity preemptively to assert a defense that would be available to it in a state or local enforcement action." *Id.* Accordingly, in *NextG*, the Second Circuit reversed the dismissal of claims for declaratory and injunctive relief because "[t]he gist of NextG's claims . . . was that the City's [conduct] is prohibited or preempted by Section 253." 513 F.3d at 54. The same is true here.

Verizon's complaint repeatedly alleges that the Code not just violates but "is preempted by, federal law." (Dkt. 1 at ¶ 1; *see also id.* at ¶ 34 (alleging "categories of annual 'right-of-way compensation' . . . conflict with, and are preempted by, Section 253"); ¶ 36 ("preempted by Section 253").) Verizon seeks "declaratory relief that various provisions of the Code violate, and are

---

[14]    The City admits that the Second Circuit in *NextG* "did not reach the question of whether a cause of action for equitable or declaratory relief may lie under Section 253" itself. (Dkt. 57-10 at 7.) Indeed, *NextG* only held that "a telecommunications provider may not bring a cause of action for damages under Section 1983 [42 U.S.C. § 1983] for violations of Section 253"— something Verizon does not seek to do here. *NextG*, 513 F.3d at 52. Other courts have found a private cause of action under Section 253(c). *See, e.g., TCG Detroit v. City of Dearborn*, 206 F. 3d 618, 624 (6th Cir. 2000) (holding Section 253(c) "authorizes a private right of action in federal court"); *BellSouth Telecomm., Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1191 (11th Cir. 2001) (same); *Coastal Communications Service v. City of New York*, 658 F. Supp. 2d 425 (E.D.N.Y. 2009) (dismissing claim for damages under Section 253, but granting declaratory and injunctive relief); *but see NextG*, 513 F.3d at 53 n.4 (distinguishing *TCG Detroit* and *BellSouth* in dicta).

preempted by, Section 253 and injunctive relief prohibiting Defendant from enforcing those provisions of the Code." (*Id.* at ¶ 2; *see also id.* at 26-27 ¶¶ e-h (seeking order "declaring that [Code provisions] are preempted by 47 U.S.C. § 253").) Thus, Verizon has, and has stated, a cause of action for preemption and properly invoked the court's equity jurisdiction regardless of whether Section 253 provides a cause of action itself.

The City ultimately appears to concede that Verizon has the ability to bring this case whether or not there is a private cause of action under Section 253, suggesting that Verizon "might have been able to enforce the terms of Section 253 had it brought a claim under the Supremacy Clause." (Dkt. 57-10 at 9.) But the City claims the suit should nevertheless still be dismissed because "the Supremacy Clause is not raised even once in [the] complaint." (Dkt. 57-10 at 9.) The City cites no decision requiring dismissal merely because the words "Supremacy Clause" do not appear in the complaint. And, in any event, the "Supremacy Clause is not the 'source of any federal rights' and certainly does not create a cause of action." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324-25 (2015). Rather, as explained above, federal courts have the inherent equitable authority to enjoin state or local action that conflicts with federal law: "[A]s we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Id.* at 326.[15] Thus, there was no reason for Verizon's complaint to mention the Supremacy Clause.

Finally, even if the City were right that the complaint should have mentioned the

---

[15]    "The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong*, 575 U.S. at 327.  The City does not argue that the Telecommunications Act precludes judicial review, nor could it.  "[N]othing in the [Telecommunications] Act displays any intent to withdraw federal jurisdiction under § 1331." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 638 (2002); *see also City of Austin v. Abbott*, 385 F. Supp. 3d 537, 542 (W.D. Tex. 2019); *CNSP, Inc. v. Webber*, No. CV 17-0355 KG/SCY, 2020 WL 2745456, at *6 (D.N.M. May 27, 2020).

Supremacy Clause, which it is not, the City's argument that the complaint should be dismissed on this ground exalts form over substance and is at odds with the Supreme Court's admonition that "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). "The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Id.* (citing 5 C. Wright & A. Miller, §1215 at 277-278 (3d ed. 2002)); *see also Smith v. Meese*, 821 F. 2d 1484, 1496 (11th Cir. 1987) ("Dismissing the complaint for the failure to choose the correct words, when the meaning of the allegations are clear, would return us to the days of the common law forms of pleading."). The complaint clearly alleges and the City is well aware that Verizon claims the Code is preempted by Section 253. Nothing more is required.[16]

## VI.    VERIZON HAS STANDING AND ITS CLAIMS ARE RIPE

In its final attempt to avoid having the Court reach the merits of Verizon's challenge, the City reasserts its argument that Verizon "does not have standing, because [it] cannot come forward with any evidence regarding any injury in fact." (Dkt. 57-10 at 11.)  In particular, the City claims that Verizon "has not registered under the City's Telecom Code, has not sought to enter into a Master License Agreement, and has not made any attempt to install any telecommunications facilities in the City's right of way" other than providing a "conceptual presentation." (*Id.*)  For the same reasons, the City again argues this challenge is not ripe. (*Id.* at 11-12.)  The City

---

[16]    To the extent the Court believes the Complaint should be amended to clarify the basis of the claim, Verizon requests that it be deemed so amended. *Johnson*, 574 U.S. at 11 ("For clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an opportunity to add to their complaint a citation to §1983."); *Clomon v. Jackson*, 988 F.2d 1314, 1323 (2d Cir. 1993) ("[T]he undisputed facts as presented on the summary judgment motion served as a basis to deem the complaint amended to conform with the proof pursuant to Fed. R. Civ. P. 15(b).").

previously made these same arguments in its motion to dismiss.  The Court rejected them then. *Cellco P'ship v. City of Rochester*, 473 F. Supp. 3d 268, 277-82 (W.D.N.Y. 2020).  And the City's arguments remain wrong for much the same reasons.

Verizon has brought a facial challenge to the relevant provisions of the Code.  To show injury in a pre-enforcement facial challenge, Verizon "need not demonstrate to a certainty that it will be prosecuted under the statute . . ., but only that it has 'an actual and well-founded fear that the law will be enforced against' it.'" *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008) (citations omitted).  The law is clear that a plaintiff need not engage in acts that "would serve no purpose" merely to further its standing.  *Bach v. Pataki*, 408 F.3d 75, 82-83 (2d Cir. 2005), *overruled on other grounds*, *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

This Court previously ruled that, based on the allegations in the complaint, "it was reasonable for Plaintiff to believe that the Code would be enforced against it" and "Plaintiff was not required to submit to the Code before challenging it in court."  *Cellco*, 473 F. Supp. 3d at 281 (citing *Bach*, 408 F.3d at 82-83, and *Williams v. Lambert*, 46 F.3d 1275, 1280-81 (2d Cir. 1995)). The undisputed record evidence now confirms the allegations in the complaint and shows that Verizon had (and has) firm intentions to install facilities in the City rights-of-way and that the City explicitly directed Verizon to comply with the Code—specifically including the challenged provisions—giving rise to an "actual and well-founded fear" of enforcement:

- Two Verizon affiliates currently have telecommunications facilities installed in the City rights of way.  (App. Ex. G at ¶ 12.)

- Verizon operates in an ultra-competitive industry that is now in a critical time when next-generation wireless services are being deployed—and these indisputable economic realities incentive Verizon to deploy facilities expeditiously.  (*Id.* at ¶ 12.)

- On October 9, 2018, Verizon gave a presentation to the City about its plans to deploy small cell facilities in the rights of way, including a map showing the conceptual location of over 500 proposed small cells.  (*Id.* at ¶ 5.)

- Because of the Code, Verizon has put on hold a number of projects in the City, including projects to install facilities in the rights of way and on private rooftops that require access to the rights of way.  (*Id.* at ¶ 13.)

- Verizon still intends to upgrade and densify its network pending the resolution of this action.  (*Id.* at ¶ 15.)

- Verizon petitioned the City not to enact the Code on January 10, 2019. (*Id.* at ¶ 7.)

- Verizon communicated with the City after the Code took effect to advise that Verizon was "eager to deploy wireless network infrastructure to enable it to offer next-generation wireless services in the City, but the City's response would affect Verizon's ability to do so."  (*Id.* at ¶ 9, 10.)

- On July 30, 2019, the City informed Verizon that "[t]he time for compliance with the Code is fast approaching" and in order to be in compliance with the Code, Verizon was required, by October 1, 2019, to register under Section 106-5 of the Code, complete and enter into a Master License Agreement subject to the challenged Code provisions, complete permit applications as necessary under the challenged Code provisions, and make "payment of all fees and compensation due to the City that accrued as of the effective date of [the Code]."  (*Id.* at ¶ 11; Dkt. 3 at 9.)

Thus, the record amply supports the allegations in the Complaint, which the Court previously concluded were sufficient to support a finding of both standing and ripeness.

Failing in those arguments, the City also asserts another argument that it previously pursued—namely, that Verizon lacks standing because it can supposedly afford to pay the fees. (Dkt. 57-10 at 11-12.)  But the Court already rejected that argument, too, holding that Verizon's "challenges to the fee provisions in the Code are not based on its ability to pay those fees, but rather based upon their alleged circumvention of federal law—namely, their failure to be related to Defendant's objectively reasonable costs and their discriminatory nature.  Plaintiff's ability to pay the fees mandated by the Code does not affect whether the Code is preempted by federal law." *Cellco*, 473 F. Supp. 3d at 281.  That is still the case now—Verizon's ability to pay the City's fees or any other locality's fees does not, as a matter of law, impact standing, ripeness, or the issue of preemption.  As this Court previously ruled, Verizon "adequately alleged a concrete and

24

particularized injury based on its existing and planned wireless infrastructure, which would be affected by the Code." *Cellco*, 473 F. Supp. 3d at 279.  The undisputed record confirms those allegations.  Thus, Verizon has standing and its claims are ripe.[17]

## CONCLUSION

For the reasons set forth above and in Verizon's summary judgment brief, the Court should deny the City's motion and enter summary judgement in favor of Verizon.

Dated: New York, New York
      November 18, 2021

KELLEY DRYE & WARREN LLP

By:    /s/ Damon W. Suden       
      Damon W. Suden
      3 World Trade Center
      175 Greenwich Street
      New York, NY 10007
      Tel: (212) 808-7800
      Email: dsuden@kelleydrye.com

      Lauri A. Mazzuchetti (*pro hac vice*)
      Robert N. Ward
      One Jefferson Road, 2nd Floor
      Parsippany, NJ 07054
      Tel: (973) 503-5900
      Email: lmazzuchetti@kelleydrye.com
          rward@kelleydrye.com

      *Attorneys for Plaintiff*
      *Cellco Partnership d/b/a Verizon Wireless*

---

[17]     The City also cites to but does not explain the relevance of *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739 (S.D.N.Y. 2017)—a negligence case about identity theft.