UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CELLCO PARTERNSHIP D/B/A VERIZON WIRELESS,

<table>
<tr><td></td><td>Plaintiff,</td><td>MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION</td></tr>
<tr><td>v.</td><td></td><td></td></tr>
<tr><td>CITY OF ROCHESTER,</td><td></td><td>Case No. 19-CV-6583</td></tr>
<tr><td></td><td>Defendant.</td><td></td></tr>
</table>

### PRELIMINARY STATEMENT

Plaintiff Cellco Partnership—a telecommunications company without any telecommunication facilities in the City of Rochester—moves for summary judgment on its facial challenges to the City's annual right-of-way compensation related to small wireless facilities and linear telecommuncation facilities, which compensation amounts are set by the City's Telecommunications Code.  Plaintiff does not demonstrate that the City's fees presently do or ever will prohibit it from providing telecommunications services, and plaintiff also fails to demonstrate that the fees charged by the City exceed a reasonable approximation of the City's objectively reasonable costs related to those (non-existent) telecommunications facilities, which is its burden on this facial challenge.  Because a reasonable fact finder could find that the City's fees here at issue are no greater than an approximation of its costs, plaintiff's motion for summary judgment should be denied.

### STATEMENT OF FACTS

In February 2019, the City of Rochester enacted its Telecommunication Ordinance, which is codified at Chapter 106 of the Code of the City of Rochester, entitled "Telecommunications in the Right-Of-Way" ("Telecom Code").  *See* Exhibit X to the Plaintiff's Rule 56 Statement.  The Telecom Code requires an entity with telecommunications facilities in

1

the right-of-way—or one that proposes to install telecommunications facilities in the right-of-way—to register under the Telecom Code and enter into a Master License Agreement prior to obtaining any permit for work in the right of way related to any telecommunications facility. Plaintiff Exhibit X at §§ 106-5 and 106-7.  The City's Telecom Code charges an annual fee of $1,500 for each small cell pole attachment. Plaintiff's Exhibit X at § 106-15(B)(4).  As to fees for underground or aerial conduit containing telecommunications facilities such as fiber, the Code charges fees as follows: "In the first year, $10,000 for up to 2,500 linear feet of telecommunications facilities per contiguous site, per conduit or multiple conduits up to five inches total in diameter in the right-of-way, $1.50 per linear foot for 2,500 through 12,500 linear feet of telecommunications facilities and $0.75 per linear foot thereafter. Annually after the first year of installation, $5,000 for up to 2,500 linear feet of telecommunications facilities and $1 per linear foot for 2,500 through 12,500 linear feet of telecommunications facilities and $0.50 per linear foot thereafter."  Plaintiff's Exhibit X, § 106-15(B)(1)(a) and (B)(2).

Plaintiff is a telecommunications company that has no telecommunications facilities in the City right of way.  *See* Exhibit C to the Beath Declaration, Plaintiff's Response to Defendants' First Interrogatories, Response to Interrogatory No. 1 ("Verizon and its affiliates do not currently own wireless network infrastructure facilities in the City rights-of-way[.]").  To date, plaintiff has not registered under the City's Telecom Code, has not sought to enter into a Master License Agreement, and has not sought to undertake any work in the City's right of way to install any telecommunications facilities.  Beath Decl. ¶ 7.  Since plaintiff has no telecommunications facilities in the City's right of way, it has not been charged any of the fees under the Telecom Code with which it takes issue.  Beath Decl. ¶ 8.

In any case, the City's Telecom fees are less than a reasonable approximation of the City's costs for right of way maintenance related to the telecommunications facilities.  Beath Decl. ¶ 9.  The City's Director of Telecommunications, Louie Tobias, undertook a cost analysis that is reflected in the spreadsheet attached to plaintiff's Rule 56 Statement of Facts as Exhibit R.  The first five pages of the spreadsheet set forth an approximation of City costs related to linear telecommunication facilities, the second five pages set forth an approximation of City costs related to small cell attachment fees.  *See* Plaintiff's Exhibit R.  As Mr. Tobias explained during his deposition, in attempting to determine the City's costs as related to each small wireless facility or each linear foot of conduit, he evaluated the amount of time spent by various staff members in different departments of the City in relation to telecommunications facilities in the right of way, then calculated the proportionate cost of that time based upon the individual's salary and benefits.  Tobias Deposition, Exhibit A to the Beath Decl., at 122-134.  Mr. Tobias arrived at the time estimates in the spreadsheet by interviewing City employees and supervisors about the amounts of time spent working on issues related to telecommunications in the right of way.  Exhibit A at 136-137.  Once Mr. Tobias arrived at a total annual telecommunications cost estimate, he distributed the cost over the total number of small cell attachments to arrive at a per-facility cost, and did the same for the underground and aerial facilities to arrive at a per-linear-foot cost.  Exhibit A at 152-156.

Mr. Tobias's cost analysis found that the City's approximate right of way costs related to small cell facilities on a per-facility basis was $4,381 per pole attachment based upon an assumption of 300 installations per year, and was $6,571 per pole attachment based upon an assumption of 200 installations per year.  *See* Plaintiff's Exhibit R.  Thus, under Mr. Tobias's

analysis, the City's annual pole attachment fee of $1,500 is less than the City's approximate costs.

Similarly, Mr. Tobias determined that the approximate right-of-way costs related to linear telecommunications facilities is $6.13 per linear foot.  The City charges $10,000 for the first 2,500 of linear feet of telecommunications conduit, which comes to $4 per foot; the per-foot fee decreases as additional facilities beyond the first 2,500 feet are installed.  *See* Plaintiff's Exhibit R.  Thus, like the small cell attachment fee, the fees for underground and aerial linear facilities are less than the City's approximate costs.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Jennejahn v. Vill. of Avon*, 575 F. Supp. 2d 473, 477 (W.D.N.Y. 2008) (quoting Fed. R. Civ. P. 56(c)). In deciding whether to grant summary judgment the Court must decide whether there are any disputed material facts and must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991); *Jennejahn*, 575 F. Supp. at 477.  Further, to succeed in this facial challenge to the City's Telecom Code, plaintiff "must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).

A genuine issue regarding a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *Jennejahn*, 575 F. Supp. at 477.  "The moving

4

party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the nonmoving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of 'metaphysical doubt' concerning the facts." *Jennejahn*, 575 F. Supp. at 477 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Bryant*, 923 F.2d at 982).

## ARGUMENT

**I.**     **Plaintiff Is Not Entitled to Summary Judgment Because It Fails to Show that the Challenged Fees Prohibit It From Providing Telecommunications Services.**

Plaintiff asserts just two claims for relief in its complaint: the first contending that Small Wireless Attachment Fees in the City Telecommunications Code prohibit plaintiff from providing telecommunications services; the second contending that the right of way fees for underground and aerial linear telecommunications facilities prohibit Verizon from providing telecommunications services.  Plaintiff purports to bring these claims directly under 47 U.S.C. § 253.[1]

In determining claims for effective prohibition under Section 253, like the ones here, courts in the Second Circuit place the burden on plaintiff to first demonstrate a prohibition or effective prohibition of service under § 253(a).  *See, e.g., TC Sys. v. Town of Colonie*, 263 F. Supp. 2d 471, 481 (N.D.N.Y. 2003)("The burden of showing that a municipality has violated § 253(a) is on the party seeking preemption, in this case, Plaintiffs.").  After making such a

---

[1] As argued in the City's motion for summary judgment, docket entry 57, plaintiff cannot bring a claim directly under § 253, which does not provide a private right of action.  While plaintiff might have brought these claims under the Supremacy Clause, the Supremacy Clause is not invoked at any point in plaintiff's complaint.  Accordingly, plaintiff's action is procedurally improper and should be dismissed.

showing, the burden shifts to the municipality to demonstrate that the regulation or fee at issue is subject to the safe harbor provision set forth at § 253(c).  *Id.* at 484 ("Once the party seeking preemption has sustained its burden of showing that a local regulation has violated § 253(a), the burden of proving that the regulation is saved by § 253(c) is on the party claiming that the 'safe harbor' applies, in this case, the Town.").  This burden shifting framework remains the same even after the FCC issued its Small Cell Order in September of 2018.  *See Crown Castle NG E. LLC v. Town of Oyster Bay*, No. 17-CV-3445 (SJF) (ARL), 2020 U.S. Dist. LEXIS 31355, at *40 (E.D.N.Y. Feb. 21, 2020)("The burden is on the plaintiff to prove that Section 253(a) acts as a prohibition of the regulation in question before determining whether the regulation is saved by Section 253(c)."), *R&R affirmed and case dismissed*, *Crown Castle NG E. LLC v. Town of Oyster Bay*, No. 17-CV-3445(SJF)(ARL), 2020 U.S. Dist. LEXIS 83546 (E.D.N.Y. May 11, 2020).  And it applies post-Small Cell Order even in cases challenging telecommunications franchise fees.  *See N.M. Gas Co. v. Bd. of Cty. Comm'rs*, 423 F. Supp. 3d 1190, 1202 (D.N.M. 2019)("Only after the plaintiff sustains its burden of showing a violation of §253(a) by formally or effectively prohibiting entry into the telecommunications services market does the burden of proving that the regulation comes within the safe harbor in Section 253(c) fall on the defendant municipality. In other words, if the provision is not prohibitive, there is no preemption under § 253.").

"[T]he purpose of Section 253 is to impose some limits on the ability of state and local governments to regulate telecommunications but not to interfere with the right of such governments to impose reasonable charges for the concomitant use of public property."  *NextG Networks of N.Y., Inc. v. City of N.Y.*, 513 F.3d 49, 53 (2d Cir. 2008).  "Courts have held that a prohibition does not need to be complete or 'insurmountable' to run afoul of § 253(a)."  *TCG*

*N.Y., Inc. v. City of White Plains*, 305 F.3d 67, 76 (2d Cir. 2002)(citing *RT Communs., Inc. v. FCC*, 201 F.3d 1264, 1268 (10th Cir. 2000)). "Additionally, the FCC has stated that, in determining whether an ordinance has the effect of prohibiting the provision of telecommunications services, it 'considers whether the ordinance materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment.'" *Id.* (quoting *Cal. Payphone Ass'n*, 12 FCC Rcd 14191 (1997)). Plaintiff must come forward "with sufficient evidence demonstrating that the requirement at issue has or may act as a 'barrier to entry' into the telecommunications market." *Pac. Bell Tel. Co. v. Cal. DOT*, 365 F. Supp. 2d 1085, 1088 (N.D. Cal. 2005)(citing *Qwest Corp. v. City of Portland*, 385 F.3d 1236, 1241 (9th Cir. 2004)).

Where a telecommunications provider claims that the municipality's fees are prohibitively high, it may not rely upon "wholly conclusory statements and speculation," but must come forward with "evidence as to what the actual economic effect" of the City's fees "would have been upon the company." *NextG Networks of N.Y., Inc. v. City of N.Y.*, 2006 U.S. Dist. LEXIS 8597, at *41 (S.D.N.Y. Mar. 6, 2006), *aff'd in part and rev'd in part on other grounds*, *NextG Networks of N.Y., Inc. v. City of N.Y.*, 513 F.3d 49 (2d Cir. 2008). Such proof of actual economic effect may come in the form of "revenues, capitalization, profits, available capital, costs, budget" or "expert economic testimony . . . to explain the (alleged prohibitive) effect of the City's requirements upon NextG or the telecommunications market." *Id.* at *43.

Here, plaintiff cannot demonstrate that the City's pole attachment fees (addressed in plaintiff's first cause of action) or its fees for linear aerial or underground telecommunications facilities (addressed in plaintiff's second cause of action) effectively prohibit plaintiff from providing telecommunications service and, even if they could, the City's fees are saved by §

253(c).  For purposes of this analysis, defendant addresses first plaintiff's second claim for relief which attacks the City's linear telecommunications fees, then addresses the first claim for relief, which attacks the City's small cell pole attachment fees.

### A. Plaintiff Does Not Demonstrate that the City's Fees for Aerial and Underground Linear Facilities Effectively Prohibit Plaintiff from Providing Telecommunications Services.

In discovery in this action, plaintiff has refused to disclose the very evidence that it would it ought to rely upon to make out its claim of effective financial prohibition resulting from the City's fees: "revenues, capitalization, profits, available capital, costs, budget".  This alone is enough to deny plaintiff's motion for summary judgment as it cannot satisfy even the first prong of the analysis.  *See, e.g.*, *N.M. Gas Co. v. Bd. of Cty. Comm'rs*, 423 F. Supp. 3d 1190, 1205 (D.N.M. 2019)(granting summary judgment dismissing § 253 claim that was based upon purportedly excessive franchise fee where plaintiff CenturyLink conclusorily claimed that the fee was a "massive increase" but "offer[ed] little else to meet its burden under §253(a). Plaintiff does not explain how or why the new use fee would effectively or materially prohibit CenturyLink from providing its telecommunications service. While it is not required to specify particular services that would be affected, it is still required to show that the County's Ordinance formally or effectively prohibits its entry into the telecommunications market or prevents it from continuing to provide its services. Except for the payment of a fee it describes simply as 'massive'" Plaintiff does not describe how the Ordinance mandates unfeasible requirements that forces it to change or suspend any of its services.").

Of course part of the reason that plaintiff cannot demonstrate any prohibition resulting from the City's linear underground and aerial telecommunications fees is that plaintiff has provided no evidence that it owns or has any intention to install any linear telecommunications

facilities in the City of Rochester.  The only evidence of potential deployment of telecommunications facilities provided to the City at any point was a 2018 presentation of a "conceptual" deployment of small cell attachments—the presentation was entirely bereft of any plans to install so call "backhaul" or other fiber or linear telecommunications facilities.

In short, plaintiff does not demonstrate what fees it might be responsible for paying the City for linear telecommunications deployment (if any) and it does not demonstrate the financial strain that such fees would cause the plaintiff (if any).

Instead of even attempting to satisfy its burden to demonstrate that the City's linear telecommunication fees prohibit plaintiff from providing telecommunications services, plaintiff instead purports to apply the FCC Small Cell Order's rationale to these fees.  This argument is flawed for a number of reasons.

First, the FCC Small Cell Order does not apply to linear underground and aerial telecommunications facilities.  While the FCC <u>could</u> have applied its analysis in the Small Cell Order to all telecommunications facilities, it did not.  Rather, the FCC Small Cell Order was issued to address the fact that "America is in the midst of a transition to the next generation of wireless services, known as 5G" which requires telecommunications providers to "densify their networks with new small cell deployments that have antennas often no larger than a small backpack."  Small Cell Order at ¶¶ 1 and 3.  According to the FCC, "estimates predict that upwards of 80 percent of all new deployments will be small cells going forward.  To support advanced 4G and 5G offerings, providers much build out small cells at a faster pace and at a far greater density of deployment than before." Small Cell Order at ¶ 3.  Given the centrality and volume of anticipated small cell deployments, the FCC limited the scope of its Small Cell Order to <u>just</u> small cell technology, defined, in footnote 9 of the Order as follows:

"Small Wireless Facilities," as used herein and consistent with section 1.1312(e)(2) [of the Code of Federal Regulations], encompasses facilities that meet the following conditions:

(1) The facilities--

(i) are mounted on structures 50 feet or less in height including their antennas as defined in section 1.1320(d), or

(ii) are mounted on structures no more than 10 percent taller than other adjacent structures, or

(iii) do not extend existing structures on which they are located to a height of more than 50 feet or by more than 10 percent, whichever is greater;

(2) Each antenna associated with the deployment, excluding associated antenna equipment (as defined in the definition of antenna in section 1.1320(d)), is no more than three cubic feet in volume;

(3) All other wireless equipment associated with the structure, including the wireless equipment associated with the antenna and any pre-existing associated equipment on the structure, is no more than 28 cubic feet in volume;

(4) The facilities do not require antenna structure registration under part 17 of this chapter;

(5) The facilities are not located on Tribal lands, as defined under 36 CFR 800.16(x); and

(6) The facilities do not result in human exposure to radiofrequency radiation in excess of the applicable safety standards specified in section 1.1307(b).

FCC Small Cell Order, ¶ 11, fn. 9.

The Small Cell Order is plain that it applies only to Small Wireless Facilities:

We conclude that ROW access fees, and fees for the use of government property in the ROW, such as light poles, traffic lights, utility poles, and other similar property *suitable for hosting Small Wireless Facilities*, as well as application or review fees and similar fees imposed by a state or local government *as part of their regulation of the deployment of Small Wireless Facilities* inside

> and outside the ROW, violate Sections 253 or 332(c)(7) unless these conditions are met: (1) the fees are a reasonable approximation of the state or local government's costs, (2) only objectively reasonable costs are factored into those fees, and (3) the fees are no higher than the fees charged to similarly-situated competitors in similar situations.

Small Cell Order ¶ 50.[2]  Accordingly, the Small Cell Order is of no value to plaintiff in its challenge to the City's fees for linear telecommunications facilities, which fall outside of the definition of "small wireless facility" at 47 CFR 1.1312 and, therefore, are beyond the reach of the Small Cell Order.[3]

To warrant summary judgment on its second claim for relief, plaintiff had the burden of providing evidence sufficient to show that the City's fees for linear telecommunications facilities prohibit plaintiff from providing telecommunications services.  Plaintiff comes nowhere near such a showing.  As such, the motion should be denied.

**B.  Plaintiff Does Not Demonstrate that the City's Small Cell Pole Attachment Fees Effectively Prohibit Plaintiff from Providing Telecommunications Services.**

As with plaintiff's claims concerning the City's fees for linear telecommunications deployments, plaintiff fails to provide any evidence that the City's small cell pole attachment

---

[2] Paragraph 48 of the Small Cell Order also well underscores the FCC's focus on just small wireless facilities: "The many-fold increase in Small Wireless Facilities will magnify per-facility fees charged to providers. Per-facility fees that once may have been tolerable when providers built macro towers several miles apart now act as effective prohibitions when multiplied by each of the many Small Wireless Facilities to be deployed. Thus, a per-facility fee may affect a prohibition on 5G service or the densification needed to continue 4G service even if that same per-facility fee did not effectively prohibit previous generations of wireless service."  No mention is made of fiber or other "backhaul."

[3] Plaintiff's attempt to establish "backhaul" as some middle ground between small wireless facilities and linear telecommunications facilities that is subject to the FCC Small Cell Order cost-fee analysis is an exercise in sophistry.  The FCC Order does not use the term "backhaul" and—as set forth in defendant's Rule 56 Counterstatement of Facts—Louie Tobias, during his deposition in this matter, repeatedly resisted adopting the term.  The long and short of it is that the emergency 5G technology treated in the FCC Order is the small wireless facility alone, regardless of the fact that it must be connected to a wired network to operate.

fees actually prohibit plaintiff from providing telecommunications services.  But plaintiff believes that the FCC Small Cell Order negates its obligation to make a showing of effective prohibition and allows it, instead, to assume that municipal right of way fees that exceed a reasonable approximation of the City's objectively reasonable right-of-way costs are—by definition—a material inhibition of plaintiff's ability to provide telecommunications services. The FCC Small Cell Order should not be followed by this Court because it turns the plain meaning of § 253(a) on its head by requiring a showing of municipal costs that is entirely untethered from the prohibitive effect showing required by the statute.  "[F]ees are prohibitive because of their financial effect on service providers, not because the happen to exceed a state or local government's costs."  *City of Portland v. United States*, 969 F.3d 1020, 1054 (9th Cir. 2020)(Bress, J., dissenting).

### a.   The Court May Evaluate the Validity of the FCC Small Cell Order

In the course of this matter, plaintiff has argued that the Hobbs Act robs this Court of jurisdiction to entertain any challenge to the FCC Small Cell Order.  Plaintiff is incorrect.  The Hobbs Act, codified at 28 U.S.C. § 2342, provides that the Courts of Appeal have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47."  Section 402(a) of title 47 states: "Any proceeding to enjoin, set aside, annul or suspend any order of the Commission under the Act . . . shall be brought as provided by and in the manner prescribed in" 28 U.S.C. § 2342.

The City here is not bringing a "proceeding to enjoin, set aside, annul or suspend" the FCC Small Cell Order.  Rather, it is raising as an affirmative defense in a proceeding brought against the City, that the Small Cell Order is arbitrary and irrational and should not be followed

by this Court.  Further, notwithstanding the language of 28 U.S.C. § 2342(1) and 47 U.S.C. 402(a), 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"—there is no carve out of this jurisdiction for FCC Orders.

Whether the Hobbs Act precludes a District Court's review remains an open question in the Second Circuit (*see Prayze FM v. FCC*, 214 F.3d 245, 250 (2d Cir. 2000)), and under Supreme Court precedent (*see PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.,* 139 S. Ct. 2051 (2019)).  The Supreme Court heard the *PDR Network* matter in order to decide "whether the Hobbs Act's commitment of 'exclusive jurisdiction' to the courts of appeals requires a district court in a private enforcement suit like this one to follow the FCC [Order at issue.]"  *Id.* at 2055.  Though squarely posing this question, the majority of the Court did not answer it, finding, instead, that more information was required and remanding the case to the lower courts for further proceedings.  Notably, however, in remanding the matter, the Supreme Court noted a number of circumstances in which the Hobbs Act "may" not bar a defense challenging the FCC Order, such as when the FCC Order at issue is "interpretive" rather than "legislative", or where the party raising a defense challenging the FCC Order did not have a "prior" and "adequate" opportunity to seek review of the Order.  Justice Kavanaugh, joined by Justices Thomas, Alito and Gorsuch, went even further than this in a concurring opinion, concluding "that the Hobbs Act does not bar a defendant in an enforcement action from arguing that the agency's interpretation of the statute is wrong" reasoning that the jurisdictional limitations of the Hobbs Act applies only to "facial pre-enforcement review" of an FCC Order.  *Id.* at 2058.

This Court should follow the rationale of the concurring Justices in *PDR Network* and evaluate the validity of the FCC Small Cell Order.

### b. The Small Cell Order is Inconsistent with Statute and Irrational and Should Not Be Followed By This Court

Section 253(a) provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."  This section of the statute says nothing about State or locality's costs—it focuses on the prohibitive effect of a regulation or legal requirement <u>on the telecommunications provider</u>.

The FCC Order—in assuming that all above-cost municipal fees necessarily effect a prohibition of service—essentially expunges from the statute the need for a telecommunications provider to make any showing of prohibition whatsoever when fees are at issue.  An interpretation of statute that falls so far from the plain-text mark is not entitled to any deference by the Court.  Because the FCC's interpretation of § 253(a) is so flawed, this Court should not adopt the reasoning of the Small Cell Order.

Judge Bress of the 9th Circuit recently expressed his frustration with the irrationality of the Small Cell Order's presumption that municipal fees in excess of costs are prohibitive:

> On this record, the FCC has not adequately explained its basis for concluding, contra our precedent, that there is an intrinsic relationship between a fee's approximation of costs and its prohibitive effect on service providers. The FCC's reliance on individual fees it considers "excessive" tells us that fees can work effective prohibitions. But this does not on its own justify a blanket prohibition on all above-cost fees. A $ 7,500 fee in Portland may well prohibit service, but that is because of the financial toll it inflicts, not because it exceeds the city's costs.

*City of Portland v. United States*, 969 F.3d 1020, 1055 (9th Cir. 2020)(Bress, J., dissenting).  In

deciding whether to follow "an agency's construction of the statute which it administers," a

Court is confronted with two questions:

> First, always, is the question whether Congress has directly spoken
> to the precise question at issue. If the intent of Congress is clear,
> that is the end of the matter; for the court, as well as the agency,
> must give effect to the unambiguously expressed intent of
> Congress. If, however, the court determines Congress has not
> directly addressed the precise question at issue, the court does not
> simply impose its own construction on the statute, as would be
> necessary in the absence of an administrative interpretation.
> Rather, if the statute is silent or ambiguous with respect to the
> specific issue, the question for the court is whether the agency's
> answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 842-43 (1984).  Here, congress's intent is

unambiguous: a local regulation or legal requirement is of no moment except where it

"prohibit[s] or [has] the effect of prohibiting the ability of any entity to provide any interstate or

intrastate telecommunications service."  The plain language of the statute makes clear that

Section 253(a) is violated only where the telecommunications provider is prohibited from

providing telecommunications service.  This is not ambiguous and, accordingly, the FCC Order

should be considered a nullity.

Even if there were some ambiguity here, the FCC's equation of local above-cost fees

with effective prohibition of telecommunications services in all instances where recurring fees

exceed $270 per year is not "a permissible construction of the statute."

> If Congress has explicitly left a gap for the agency to fill, there is
> an express delegation of authority to the agency to elucidate a
> specific provision of the statute by regulation. Such legislative
> regulations are given controlling weight unless they are arbitrary,
> capricious, or manifestly contrary to the statute.

*Chevron*, 467 U.S. at 843-44.  The FCC's Small Cell Order is both arbitrary and capricious.

Judge Bress's decision in the 9th Circuit's *Portland* matter—where he had the full FCC record

to evaluate—well articulates the arbitrariness of the Order.  Looking at the "linchpin" of the

FCC's factual analysis—a 2018 study by Corning, Inc. that estimated a $ 2 billion cost savings

and reinvestment to the telecommunications industry as a result of reduced municipal fees--

Judge Bress sounded the depths of the FCC Order's irrationality:

> At bottom, what the Corning Study conveys is that if fees are
> reduced, it will produce cost savings to those who pay the fees.
> Small Cell Order ¶¶ 50, 53, 55-56, 60 & n.169, 64-65 & nn.194-
> 95. But that commonsense observation would be true of any fee
> considered in the aggregate. And it would seemingly mean that any
> fee in any amount could qualify as an effective prohibition, once
> aggregated. The same would be true of the aggregate effects of any
> form of regulation that localities would apply outside the fee
> context. I am therefore concerned that on the record as it stands,
> the FCC's approach lacks a limiting principle. At least absent some
> estimated quantification of above-cost fees in the aggregate (which
> the Corning Study does not provide) or some further estimate tied
> to the rule it adopted, *the FCC's logic would appear to justify the
> preemption of any state or local rule.*

*Id.* at 1055 (emphasis added).  Judge Bress's analysis also set forth a thought experiment to

illuminate the irrationality of the FCC Order:

> Consider a $ 500 fee in Small Town A that exceeds the town's
> costs by 1¢, and a $ 2,000 cost-based fee in Big City B. By the
> Small Cell Order's logic, the lower fee is preempted, but the higher
> fee is not. It is hard to rationalize the former under the statute,
> which requires an actual and material inhibition of
> telecommunications or wireless service.

All told, the FCC Small Cell Order is irrational, arbitrary and capricious and is not

entitled to deference by this Court.  Rather, the plain language of § 253(a) should control and

plaintiff's claims should be dismissed because it has failed entirely to demonstrate that the

City's fees effectively prohibit it from providing telecommunications services.

## II. Even if the FCC Order Controlled the Pole Attachment Fees for Small Wireless Facilities, a Reasonable Trier of Fact Could Find that the City's Fees are Less than a Reasonable Approximation of its Objectively Reasonable Costs.

Even assuming that the FCC Order were controlling law, still plaintiff is not entitled to summary judgment because a reasonable trier of fact could find that the City's fees for small cell pole attachments are well within the City's costs.

As an initial matter, plaintiff is incorrect that it is the City's burden to make a showing that its fees are no greater than a reasonable approximation of costs. While that might have been the City's burden in an as-applied challenge brought by plaintiff before the FCC, that is not the standard here, on a facial challenge brought in federal court. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Accordingly, even proceeding under the logic of the FCC Small Cell Order, plaintiff cannot prevail on this motion unless it makes an evidentiary demonstration based upon undisputed facts "that no set of circumstances exists" under which the City's fees do not exceed an approximation of the City's costs. Plaintiff fails to meet this burden.

Plaintiff attacks the City's cost analysis on a number of grounds, none of which are supported by the record.

First, plaintiff argues that the sole evidence provided by the City to demonstrate its cost analysis are the spreadsheets attached to plaintiff's Rule 56 Statement as Exhibit R, which plaintiff contends are inadmissible. That's simply not the case. Mr. Tobias testified at length about his cost analysis, the manner in which he undertook the analysis and the sources of the data that he considered in determining costs resulting from the City's work with

telecommunications facilities in the right of way.   Mr. Tobias's testimony is itself non-hearsay evidence that supports the City's cost analysis.  As to the spreadsheets themselves, insofar as Mr. Tobias does not recall a data point or a specific element of his analysis, the spreadsheet would be admissible under Rule 803(5) as a recorded recollection.

Second, there is no legal basis for plaintiff's assertion that only "avoidable" or "incremental" costs directly caused by deployment of a telecommunications facility may be counted toward the City's costs.  Indeed, the language of the Small Cell Order itself militates against such a narrow understanding of recoverable municipal costs.  At paragraph 69, the Small Cell Order expressly states that a reasonable approximation of objectively reasonable costs "includ[es], but [is] not limited to,

> fees for access to the ROW itself, and fees for the attachment to or use of property within the ROW owned or controlled by the government (e.g., street lights, traffic lights, utility poles, and other infrastructure within the ROW suitable for the placement of Small Wireless Facilities). This interpretation applies with equal force to any fees *reasonably related* to the placement, construction, maintenance, repair, movement, modification, upgrade, replacement, or removal of Small Wireless Facilities within the ROW, including, but not limited to, application or permit fees such as siting applications, zoning variance applications, building permits, electrical permits, parking permits, or excavation permits.

(emphasis added).  Thus, the Small Cell Order contemplates recovery of all costs "reasonably related to" the deployment of the facility in the public right of way.  The Order also explicitly recognizes, at paragraph 76, that "[b]ecause we interpret fair and reasonable compensation as a *reasonable approximation* of costs, we do not suggest that localities must use any specific accounting method to document the costs they *may incur* when determining the fees they charge for Small Wireless Facilities within the ROW." (emphasis on "reasonable approximation" in original, emphasis on "may incur" added).  Thus, insofar as plaintiff's expert argues that costs

are limited to only avoidable costs directly caused by the facility deployment, that is simply inconsistent with Small Cell Order.  Rather, the City is to assess the costs that it "may incur" and that are "reasonably related" to the telecommunications facilities at issue.  That is just what Mr. Tobias has explained that he did in undertaking his cost analysis.

Given the recency of the Small Cell Order, there is little caselaw undertaking review of cost approximations of the sort undertaken by Mr. Tobias.  Nonetheless, a useful parallel are those federal cases that assess the soundness of municipal fees under the First Amendment.  "In the First Amendment context, the Supreme Court has held that governmental entities may impose licensing fees relating to the exercise of constitutional rights when the fees are designed to meet the expense incident to the administration of the licensing statute and to the maintenance of public order in the matter licensed.  Put another way, imposing fees on the exercise of constitutional rights is permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity."  *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013)(quotations and citations omitted).  In undertaking such analyses, Courts allow assessment of not only direct costs, but also indirect costs that include the full salary and benefit of those involved in the activity for which the fee is paid.  *See Turley v. N.Y.C. Police Dep't*, 988 F. Supp. 667, 673 (S.D.N.Y. 1997)("Furthermore, Plaintiff's proposed methodology is inconsistent with the approach of averaging total costs which courts have regularly followed.")(collecting cases).

Third, plaintiff makes much of the fact that the City did not begin to record its cost analysis in the right of way spreadsheets until April of 2019, after the City had passed the Telecommunications Code in February of 2019.  Yet the FCC itself acknowledged in the Small Cell Order that "a fee not calculated by reference to costs might nonetheless happen to land at a

level that is a reasonable approximation of objectively reasonable costs, and otherwise constitute fair and reasonable compensation as we describe herein. If all these criteria are met, the fee would not be preempted." Accordingly, <u>when</u> the City performed its cost analysis is of no moment—the question is whether the fee exceeds a reasonable approximation of the City's objectively reasonable costs. Here, as established by Mr. Tobias's analysis, the City's small cell attachment fee does not exceed the City's costs.

Finally, plaintiff argues that the recurring small wireless fee of $1,500 per year should be considered to be unreasonable on its face because it is nearly five times higher than the Small Cell Order's presumptively reasonable annual recurring fee of $270. But based upon this logic, plaintiff's expert's own calculation of the appropriate fee is equally subject to criticism—Mr. Dippon arrives at a cost approximation of $54.33 per pole, an amount that is almost exactly <u>five times lower</u> than the FCC's presumptively reasonable rate. *See* Exhibit A to Plaintiff's Rule 56 Statement, at ¶ ES 10. If nothing else, this illustrates either than the FCC's presumptively reasonable rate is not to be trusted, or, more fundamentally, that the entire endeavor of limiting fees to an approximation of costs in order to avoid prohibitive effect on the telecommunications industry is, at bottom, an irrational exercise.

In sum, even if the FCC Small Cell Order could be properly applied to the City's small cell pole attachment fees, plaintiff has not provided undisputed facts sufficient to establish that the annual recurring fee of $1,500 per attachment exceeds a reasonable approximation of the City's objectively reasonable costs related to the small cell facility. As such, the motion should be denied.

## CONCLUSION

For the foregoing reasons, the City of Rochester respectfully requests that the Court

deny plaintiff's summary judgment motion in its entirety.


DATED: November 18, 2021

                                 /S/Patrick Beath

BY:    PATRICK BEATH
         Deputy Corporation Counsel
         *Attorneys for Defendant*
         30 Church Street, Room 400A
         Rochester, New York 14614
         (585) 428-6812

To:    KELLEY DRYE & WARREN LLP
        Geoffrey W. Castello
        Damon Suden
        101 Park Avenue
        New York, New York 10178
        (212) 808-7800