UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CELLCO PARTNERSHIP D/B/A
VERIZON WIRELESS,

                Plaintiff,

      v.

CITY OF ROCHESTER,

               Defendant.
_____

**DECISION AND ORDER**

6:19-CV-06583 EAW

## <u>INTRODUCTION</u>

Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Plaintiff" or "Verizon") claims that the City of Rochester ("Defendant" or "the City"), through its enactment of certain provisions of the City of Rochester Telecommunications Code (the "Telecom Code"), has violated Section 253 of the Federal Communications Act of 1934, 47 U.S.C. § 253 ("Section 253"). (Dkt. 1). Pending before the Court are the parties' opposing motions for summary judgment. (Dkt. 57; Dkt. 58). For the reasons discussed below, the Court denies in their entireties both parties' motions.

## <u>BACKGROUND</u>

The following facts are taken from the parties' respective statements of undisputed facts and responses thereto (Dkt. 57-9; Dkt. 58-2; Dkt. 60-1; Dkt. 61-4), as well as the exhibits submitted by the parties. The Court has noted relevant factual disputes.

I.      **Small Cell Infrastructure**

This case involves "small cell" technology—that is, the provision of wireless services in a small geographical area using small antennas, rather than traditional large towers.   The parties disagree regarding the complexity of installing small cell infrastructure.  Verizon maintains that such installation is straightforward and consists of two basic steps: (1) installation of a small cell attachment to a streetlight or other utility pole; and (2) connection of that attachment to underground or aerial fiber facilities in the right-of-way ("ROW").  (Dkt. 58-2 at ¶ 1).  The City contends that the installation of small cell infrastructure ranges in difficulty based upon the nature and extent of the installation. (Dkt. 61-4 at ¶ 1).

Small cells must be connected to a larger network in order to function.  (Dkt. 58-2 at ¶ 3; Dkt. 61-4 at ¶ 3).  The parties disagree about the nomenclature regarding the process for such connection.  According to Verizon, the cables or fiber facilities that connect the small cells to the larger network are known as "backhaul."  (Dkt. 58-2 at ¶ 2).  The City, on the other hand, contends that Verizon's designation of particular underground and aerial cable or fiber facilities as backhaul is arbitrary.  (Dkt. 61-4 at ¶ 2).

"The newest generation of wireless broadband technology is known as 5G and requires the installation of thousands of small cell wireless facilities."  *City of Portland v. United States*, 969 F.3d 1020, 1031 (9th Cir. 2020) (internal quotation marks omitted), *cert. denied*, ___ U.S. ___, 141 S. Ct. 2855, 210 L. Ed. 2d 962 (2021).  "5G technology is so named because it is the fifth generation of cellular wireless technology."  *Id*. at 1033. "Although 5G transmits data at exceptionally fast speeds, it does so over relatively short

distances.  For this reason, wireless providers must use smaller power-base stations in more locations, as opposed to the fewer, more powerful base stations used for 4G data transmission." *Id*.

## II.     <u>The Small Cell Order</u>

In September of 2018, the Federal Communications Commission ("FCC") issued a declaratory ruling and report and order entitled *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv*., 33 F.C.C. Rcd. 9088 (2018) (the "Small Cell Order").  The Small Cell Order limits "local governments' authority to regulate telecommunications providers" based on the FCC's authority under §§ 253(a) and 332(c)(7) of the Telecommunications Act of 1996 (the "Act").  *City of Portland*, 969 F.3d at 1032.  These provisions of the Act "authorize the FCC to preempt any state and local requirements that 'prohibit or have the effect of prohibiting' any entity from providing telecommunications services."  *Id*.  (quoting 47 U.S.C. § 253(a), (d)).  "Section 253 is, at its core, a preemption statute . . . the purpose of [which] is to impose some limits on the ability of state and local governments to regulate telecommunications."  *Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y.*, No. 12-CV-6157(CS), 2013 WL 3357169, at *12 (S.D.N.Y. July 3, 2013) (internal quotations and citations omitted), *aff'd*, 552 F. App'x 47 (2d Cir. 2014).

The Small Cell Order has numerous provisions.  Of particular importance here, the Small Cell Order concludes that:

> ROW access fees, and fees for the use of government property in the ROW, such as light poles, traffic lights, utility poles, and other similar property suitable for hosting Small Wireless Facilities, as well as application or review

fees and similar fees imposed by a state or local government as part of their regulation of the deployment of Small Wireless Facilities inside and outside the ROW, violate Sections 253 or 332(c)(7) unless these conditions are met: (1) the fees are a reasonable approximation of the state or local government's costs, (2) only objectively reasonable costs are factored into those fees, and (3) the fees are no higher than the fees charged to similarly-situated competitors in similar situations.

33 F.C.C. Rcd. at 9112-13.

## III.   The City's ROW Rules and Telecom Code

The City has published *Rules and Regulations for Work in the Right-of-Way, City of Rochester, New York* (the "ROW Rules") pursuant to Chapter 104 of the Rochester City Code. (Dkt. 58-2 at ¶ 8; Dkt. 61-4 at ¶ 8; *see also* Dkt. 58-8). Section 9 of the ROW Rules addresses "Telecommunications" and sets forth various requirements that an applicant must satisfy when seeking to attach a small cell to a utility pole owned by the City. (*See* Dkt. 58-8 at 6, 35-49).

In February of 2019, the City enacted the Telecom Code as Chapter 106 of the Code of the City of Rochester (the "City Code"). (Dkt. 57-9 at ¶ 1; Dkt. 60-1 at ¶ 1). The Telecom Code and Chapter 104 of the City Code set various fees for small cell pole attachments, including a one-time permit fee for work within the ROW at a rate of $2,000 per existing pole and $2,500 per each replacement pole, an annual fee of $1,500 for each small cell pole attachment, and initial and annual fees per linear foot for underground or aerial conduit containing telecommunications facilities such as fiber. (Dkt. 57-9 at ¶¶ 12-13; Dkt. 60-1 at ¶¶ 12-13; Dkt. 58-2 at ¶¶ 36, 46; Dkt. 61-4 at ¶¶ 36, 46; *see also* Dkt. 58-19). The City also requires an applicant to enter into a master license agreement with the City. (Dkt. 58-2 at ¶ 42; Dkt. 61-4 at ¶ 42).

- 4 -

The City maintains that these fees "are less than a reasonable approximation of the City's costs for right of way maintenance related to the telecommunications facilities." (Dkt. 57-9 at ¶ 20).  Verizon disputes that claim.  (Dkt. 60-1 at ¶ 20).

## IV.    Verizon's Activities in the City's ROW

In October of 2018, Verizon gave a presentation to the City that reflected its "anticipated plans for the installation of small wireless facilities, including the conceptual location of small wireless facilities on City poles, smart poles, or utility poles."  (Dkt. 58-2 at ¶ 23; Dkt. 61-4 at ¶ 23).  Verizon maintains that, after enactment of the Telecom Code, it "put on hold a number of projects for the installation of small wireless facilities on City poles and on privately-owned rooftops that required access to the ROW."  (Dkt. 59-2 at ¶ 6).  The City disputes this claim, and notes that Verizon has not registered under the Telecom Code or sought to enter into a master license agreement.  (Dkt. 57-9 at ¶ 9; Dkt. 60-1 at ¶ 9; Dkt. 61-4 at ¶ 25).

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing its complaint and attached exhibits on August 8, 2019.  (Dkt. 1; Dkt. 3).  Defendant moved to dismiss the complaint on October 18, 2019 (Dkt. 14), and the Court denied that motion on June 11, 2020 (Dkt. 22).  Defendant thereafter answered the complaint on June 25, 2020.  (Dkt. 23).

Factual discovery closed on May 21, 2021.  (Dkt. 47).  Expert discovery closed on September 1, 2021.  (Dkt. 53).

The parties filed their competing motions for summary judgment on October 20, 2021.  (Dkt. 57; Dkt. 58).  Responses were filed on November 18, 2021 (Dkt. 60; Dkt. 61), and replies were filed on December 2, 2021.  (Dkt. 62; Dkt. 63).

## DISCUSSION

## I.   Standard on Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*,

781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).    Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.    Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).    "Moreover, even when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.    Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

Here, there are a number of issues the Court must resolve in connection with the parties' competing motions for summary judgment, including: (1) Can Plaintiff maintain a cause of action for a violation of Section 253 of the Act? (2) Does Plaintiff have standing to pursue its claims? (3) Are Plaintiff's claims ripe? (4) Does this Court have the authority to entertain a challenge to the Small Cell Order? (5) If so, is the Small Cell Order valid? (6) Does the Small Cell Order apply to linear telecommunications facilities? and (7) If the Small Cell Order applies to the fees charged by the City, is there a genuine issue of material fact as to whether those fees are cost-based?    The Court considers these issues below.

## II.   **Plaintiff Can Maintain its Causes of Action**

Plaintiff's complaint contains two causes of action.  The first asserts that Defendant violated Section 253(a) and (c) by charging excessive small wireless facility attachment fees. (Dkt. 1 at ¶¶ 78-86).  The second asserts that Defendant violated Section 253(a) and (c) by charging excessive recurring fees for underground and aerial installations.  (*Id*. at ¶¶ 87-94).  Plaintiff does not seek damages, but instead seeks declaratory and injunctive relief.  (*Id*. at 26-27).  Defendant argues that Plaintiff cannot maintain these claims because Section 253 does not provide a private right of action.  (Dkt. 57-10 at 7-9).  The Court disagrees, for the reasons that follow.

Defendant is correct that the Second Circuit has held that "a telecommunications provider may not bring a cause of action for damages under [42 U.S.C.] Section 1983 for violations of Section 253 of the Telecommunications Act of 1996."  *NextG Networks of NY, Inc. v. City of New York*, 513 F.3d 49, 52 (2d Cir. 2008).  However, as Defendant acknowledges, the decision in *NextG Networks* "did not reach the question of whether a cause of action for equitable or declaratory relief may lie under Section 253[.]"  (Dkt. 57-10 at 7).  Because Plaintiff does not seek damages in this case, *NextG* does not bar its claims.

Further, because of the nature of Plaintiff's claims, it is ultimately immaterial whether Section 253 provides for a private right of action.  The Second Circuit has long held that "a private right of action is not required where a party seeks to enjoin the enforcement of a local rule or regulation on the ground that the regulation is preempted by federal law."  *NextG*, 513 F.3d at 53 n.4 (citing *W. Air Lines, Inc. v. Port Auth. of New York*

*& New Jersey*, 817 F.2d 222, 225-26 (2d Cir. 1987)); *see also Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136, 149 (2d Cir. 2006) (a party's "right to bring an action seeking declaratory and injunctive relief from municipal regulation on the ground that federal law preempts that regulation is undisputed").

Defendant acknowledges this longstanding Second Circuit precedent but argues that it does not aid Plaintiff because Plaintiff's complaint does not specifically reference the Supremacy Clause[1]. (*See* Dkt. 57-10 at 9) ("[P]laintiff might have been able to enforce the terms of Section 253 had it brought a claim under the Supremacy Clause—but it didn't.")). The Court finds this argument unavailing. While the complaint does not explicitly reference the Supremacy Clause, it asserts that the challenged portions of the Telecom Code are "preempted by" and "inconsistent with" Section 253. (Dkt. 1 at ¶¶ 1, 2, 26-27, 36, 86, 94).

More importantly, while older cases do suggest that the Supremacy Clause is the basis for a federal court's authority to enjoin local regulations that are preempted, the Supreme Court clarified in 2015 that while "federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law," this is not because the Supremacy Clause creates a cause of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015). Instead, a federal court has inherent equitable power to take such action, unless prohibited from doing so by statute. *See id.* at

---

[1]     In *W. Airlines*, the Second Circuit suggested that the Supremacy Clause was the basis for a federal court's authority to enjoin violations of federal law. *See* 817 F.2d at 225.

327, 329.  Accordingly, Plaintiff's failure to invoke the Supremacy Clause to support its claims of preemption was not erroneous.[2]  Additionally, there is nothing in the relevant statutes or case law to suggest, and Defendant has not argued, that Congress took any action to limit the Court's ability to grant equitable relief related to violations of Section 253. Defendant's argument that Plaintiff lacks a viable cause of action thus fails.

## III.    Plaintiff has Standing and Its Claims are Ripe

Defendant also argues as a threshold matter that Plaintiff lacks standing to bring its claims and that its claims are not ripe.  (Dkt. 57-10 at 9-12).  Defendant raised the same arguments in support of its motion to dismiss, and the Court rejected them at that time. (*See* Dkt. 22 at 10-18).  As such, the relevant question is whether the facts developed through discovery have substantiated the allegations that the Court found sufficient at the pleadings stage.  For purposes of this discussion, the Court assumes familiarity with its decision on Defendant's motion to dismiss.

"To satisfy the requirements of Article III standing, plaintiffs must demonstrate '(1) [an] injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.'"  *Hu v. City*

---

[2]    In any event, the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (summarily reversing dismissal of claim for failure to expressly invoke § 1983 when seeking damages for violations of constitutional rights).

*of N.Y.*, 927 F.3d 81, 89 (2d Cir. 2019) (quoting *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)) (alteration in original).  "[C]onstitutional ripeness" is "a specific application of the actual injury aspect of Article III standing" *i.e.*, an injury-in-fact.  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013).  "Constitutional ripeness, in other words, is really just about the first [standing] factor—to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'"  *Id*. (citation omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (To establish standing, "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical.'") (internal quotation and citations omitted).

Defendant argues that Plaintiff cannot demonstrate an injury in fact in this case because it "has not registered under the City's Telecom Code, has not sought to enter into a Master License Agreement, and has not made any attempt to install any telecommunications facilities in the City's right of way."  (Dkt. 57-10 at 11).  However, as the Court explained in its prior decision, "Plaintiff was not required to submit to the Code before challenging it in court."  (Dkt. 22 at 16).  "[A] plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has an actual and well-founded fear that the law will be enforced against it."  *Nat'l Org. for Marriage*, 714 F.3d at 689 (citation omitted).  This rule of standing applies with respect to both criminal and civil

statutes.  *See Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000).

Here, Plaintiff has presented evidence corroborating its allegation that it has been deterred from installing small cell wireless facilities in the City's ROW by the challenged fees, including: (1) the October 2018 presentation in which it identified conceptual locations for over 500 small cell wireless facilities it proposed installing on the City's poles, smart poles, or utility poles; (2) a petition from Plaintiff to the City in January of 2019 asking that the City not enact the Telecom Code; and (3) a letter dated April 15, 2019, in which Plaintiff advised the City, in sum and substance, that it was interested in deploying 5G capable small cell wireless facilities in the City, but not if the City intended to charge fees beyond those allowed under federal law.  (Dkt. 3 at 2-3; Dkt. 60-9 at ¶¶ 5, 7).  Further, on July 30, 2019, the City sent Plaintiff a letter in which it noted that the deadline for compliance with the newly enacted Telecom Code was approaching and urged Plaintiff to commence the registration process.  (Dkt. 3 at 8-9).  In other words, if Plaintiff were to pursue its pre-Telecom Code plans to install small cell wireless facilities in the City's ROW, it is undisputed that it would be required to pay the fees it claims are preempted by Section 253.

The City's contention that Plaintiff was required to register under the Telecom Code and seek to enter into a master license agreement is accordingly misplaced.  The Second Circuit has held that "futile gesture[s]" are not "a prerequisite for adjudication in federal court."  *Williams v. Lambert*, 46 F.3d 1275, 1280 (2d Cir. 1995) (finding standing and ripeness where the plaintiff had not sought a modification of child support agreement

before challenging governing state law because "her case would be dismissed summarily under the clear language of" the challenged statute); *see also Bach v. Pataki*, 408 F.3d 75, 82-83 (2d Cir. 2005) (the plaintiff was not required to complete and file an application where "[t]he State Police informed [the plaintiff] that he was statutorily ineligible for a carry license," and the plaintiff "had nothing to gain thereafter by completing and filing an application"), *overruled on other grounds by McDonald v. Chicago*, 561 U.S. 742 (2010); *NextG Networks of N.Y., Inc. v. City of N.Y.*, No. 03 Civ. 9672(RMB), 2004 WL 2884308, at *6-7 (S.D.N.Y. Dec. 10, 2004) (where the defendants argued that a city had not refused to entertain or foreclosed a request by the plaintiff for permission to install its equipment on city-owned street poles, finding claim was ripe for judicial review as the plaintiff "challenged the very requirement that it apply for and obtain a franchise under the terms of the City Charter"). Here, there is no plausible way that undertaking the time and expense to register under the Telecom Code and seek to enter into a master license agreement would alleviate the harm alleged by Plaintiff—that is, the requirement that it pay allegedly unlawful fees in order to be permitted to install small cell wireless facilities in the City's ROW. Accordingly, Plaintiff was not required to undertake these futile acts before commencing the instant lawsuit.

For these reasons, as well as the reasons discussed at length in the Court's denial of Defendant's motion to dismiss, the Court rejects Defendant's standing and ripeness arguments.

**IV.    The Court Need Not Decide whether it has Authority to Entertain a Challenge to the Small Cell Order**

Plaintiff's claims are based on the FCC's interpretation of Section 253, as set forth in the Small Cell Order.  Defendant asks the Court to find that the Small Cell Order is irrational and inconsistent with the language of Section 253 and accordingly entitled to no deference.  (Dkt. 57-10 at 21-24).  Plaintiff defends the validity of the Small Cell Order on the merits, but also argues as a threshold matter that the Hobbs Act prohibits this Court from entertaining Defendant's challenge.

As relevant here, "[t]he Hobbs Act says that an appropriate court of appeals has 'exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47.'"  *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, ___ U.S. ___, 139 S. Ct. 2051, 2055 (2019) (alteration in original and quoting 28 U.S.C. § 2342(1)); *see also* 47 U.S.C. § 402(a).  In *PDR Network*, the Supreme Court considered but ultimately declined to resolve the issue of "whether the Hobbs Act's commitment of 'exclusive jurisdiction' to the courts of appeals requires a district court in a private enforcement suit" to follow the FCC's final orders.  139 S. Ct. at 2055.

While the majority declined to reach the issue, Justice Kavanaugh, in a concurrence joined by Justices Alito, Gorsuch, and Thomas, expressed the view that "the Hobbs Act does not bar a defendant in an enforcement action from arguing that the agency's interpretation of the statute is wrong."  *Id*. at 2058 (Kavanaugh, J., concurring).  Justice Kavanaugh further explained that, in his opinion, "the text of the Hobbs Act is best read to

mean that [a party] can argue that the agency's interpretation of the [statute] is wrong.  And the District Court can decide what the statute means under the usual principles of statutory interpretation, affording appropriate respect to the agency's interpretation.  By doing so, the District Court will not 'determine the validity' of the agency order in violation of 28 U.S.C. § 2342."  *Id*. at 2064 (Kavanaugh, J., concurring).

The Second Circuit has noted, following *PDR Network*, that there is an open question as to the impact of the Hobbs Act on a court's authority to consider challenges to the FCC's statutory interpretation.  *See Gorss Motels, Inc. v. Lands' End, Inc.,* 997 F.3d 470, 477 n.4 (2d Cir. 2021).  Recognizing the lack of binding authority on this point, Defendant urges the Court to "follow the rationale of the concurring Justices in *PDR Network* and evaluate the validity of the FCC Small Cell Order."  (Dkt. 57-10 at 21).  However, the Court need not reach the issue of whether the Hobbs Act prohibits it from considering Defendant's attack on the validity of the Small Cell Order because it finds the Small Cell Order valid on the merits in any event.  In other words, assuming it is permitted to assess whether the Small Cell Order is consistent with Section 253, the Court finds no inconsistency.

The Court finds persuasive the Ninth Circuit's opinion in *City of Portland*.  There, the Ninth Circuit considered a facial challenge to the Small Cell Order, including the conditions it places on the fees chargeable by a municipality.  969 F.3d at 1037.  As the Ninth Circuit explained, it accordingly had to consider whether the Small Cell Order was within the scope of the FCC's lawful authority and whether the process by which the FCC adopted the Small Cell Order was logical or rational.  *Id*. (citing *Michigan v. EPA*, 576

U.S. 743 (2015)); *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).  The Ninth Circuit ultimately found that the "FCC's approach to fees [in the Small Cell Order] is consistent with the language and intent of Section 253(c)[3] and is reasonably explained."  *Id.* at 1039.

Defendant urges the Court to adopt the partial dissenting opinion in *City of Portland* (*see* Dkt. 57-10 at 21-24), which departed from the majority opinion to the extent it upheld "the FCC's decision to preempt any fees charged to wireless or telecommunications providers that exceed a locality's costs for hosting communications equipment."  969 F.3d at 1053 (Bress, J., dissenting in part).   In the dissenting judge's view, fees are only "prohibitive" within the meaning of Section 253 based on "their financial effect on service providers, not because they happen to exceed a state or local government's costs."  *Id.*  at 1054 (Bress, J., dissenting in part).  The Court is not persuaded by this contention.  As the *City of Portland* majority explained, the FCC rationally determined, in crafting the Small Cell Order, that "above-cost fees, in the aggregate, were having a prohibitive effect on a national basis."  *Id.* at 1038.  In other words, while a particular non-cost-based fee for a small cell installation might not, in isolation, have a significant financial effect on a particular provider, the cumulative effect of such fees was effectively prohibiting providers

---

[3]      Section 253(c) provides: "Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government."  47 U.S.C. § 253(c).

from providing telecommunications service.  This Court, like the *City of Portland* majority, finds that conclusion logically based and consistent with the relevant statutory language.

The Court further rejects Defendant's argument that Section 253 is unambiguous, thus rendering the Small Cell Order a nullity.  (Dkt. 57-10 at 22); *see Chevron*, 467 U.S. at 842-43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").  Section 253 leaves open for interpretation both what it means to "effectively prohibit" provision of telecommunications service and what constitutes "fair and reasonable compensation."  47 U.S.C. § 253(a), (c).  The FCC was thus within its authority to "choose among competing reasonable interpretations[.]"  *Michigan v. E.P.A.*, 576 U.S. 743, 754 (2015).

The Second Circuit's decision in *TCG New York, Inc. v. City of White Plains*, 305 F.3d 67 (2d Cir. 2002), supports the Court's conclusion.  There, the plaintiff contended that the "fair and reasonable compensation" language of Section 253 limited municipalities to "cost recovery."  *Id*. at  77.  The court found that the statutory language was not dispositive and noted a split between the Sixth and Ninth Circuits on the proper interpretation.  *Id*. at 77-78.  Concluding that the question was "difficult and not necessary to resolve" in the pending case, the court declined to reach the issue.  *Id*. at 79.  The *TCG New York* court thus did not view Section 253 as straightforward and unambiguous, in contrast to the position taken by Defendant.

In sum, assuming without deciding that the Court has the authority to consider Defendant's challenge to the FCC's interpretation of Section 253, that challenge fails on

the merits.  The Court will accordingly apply the Small Cell Order in deciding the parties'

competing motions for summary judgment.

## V.   The Small Cell Order Applies to the City's Fees for Linear Telecommunications Facilities

Defendant next argues that even if the Small Cell Order is legally valid, it does not,

by its own terms, "apply to linear underground and aerial telecommunications facilities."

(Dkt. 57-10 at 16).    In other words, Defendant argues that fees for linear

telecommunications facilities do not need to be cost-based because they are not included

within the scope of the Small Cell Order.   (*See id*. at 18).  This argument by Defendant

directly impacts Plaintiff's challenge to the Code's annual fees for underground and aerial

installation, which are charged by linear foot, and which Plaintiff contends constitute

"backhaul."  (*See* Dkt. 1 at ¶¶ 41-58).

In opposition, Plaintiff argues that in the Small Cell Order, "the FCC interpreted

statutory language that reads the same way, regardless of the type of facility at issue."  (Dkt.

62 at 13).  Thus, according to Plaintiff, fees for linear telecommunications facilities should

be "subject to the same standard" as fees for small wireless facilities, notwithstanding the

parties' disagreement regarding nomenclature.  (*Id*.).

A close examination of the Small Cell Order is required to resolve this dispute.  The

Small Cell Order explains that "an effective prohibition occurs where a state or local legal

requirement materially inhibits a provider's ability to engage in any of a variety of activities

related to its provision of a covered service."  33 F.C.C. Rcd. at 9104.  Specifically with

regard to fees, the FCC explained that because of the "many-fold increase in Small

Wireless Facilities . . . [p]er facility fees that once may have been tolerable . . . now act as effective prohibitions when multiplied by each of the many Small Wireless Facilities to be deployed.   Thus, a per-facility fee may affect a prohibition on 5G service or the densification needed to continue 4G service even if that same per-facility fee did not effectively prohibit previous generations of wireless service." *Id.* at 9112.

The FCC also expressly interpreted "fair and reasonable compensation" as used in Section 253(c) to "refer to fees that represent a reasonable approximation of actual and direct costs incurred by the government, where the costs being passed on are themselves objectively reasonable." *Id.* at 9115.  It then went on to state that "the requirement that compensation be limited to a reasonable approximation of objectively reasonable costs and be non-discriminatory . . . applies with equal force to any fees reasonably related to the placement, construction, maintenance, repair, movement, modification, upgrade, replacement, or removal of Small Wireless Facilities within the ROW[.]" *Id.* at 9124.

The Court agrees with Plaintiff that there is no basis for applying a different standard to fees charged for linear telecommunications facilities than for fees charged for small wireless facilities.  While it was the increased need for small cell deployments that drove the FCC to consider the matter and ultimately issue the Small Cell Order, the statutory interpretation set forth therein is not limited to that context.  In particular, there is no reason to conclude that the FCC's interpretation of "the ambiguous phrase 'fair and reasonable compensation' . . . to allow state or local governments to charge fees that recover a reasonable approximation of the state or local governments' actual and reasonable costs" is limited to small wireless facilities. *Id.* at 9125.

It is well-established that "[s]tatutory ambiguities will be resolved, within the bounds of reasonable interpretation, not by the courts but by the administering agency." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296 (2013). Here, the FCC has chosen its preferred interpretation of the statutory limitation to fair and reasonable compensation and the Court must follow it.

## VI.   **The City Bears the Burden of Showing that its Fees are Cost-Based**

Before turning to the specifics of Plaintiff's claims, the Court must resolve one more preliminary matter. Plaintiff argues that the Small Cell Order requires a municipality to demonstrate that the fees it charges are a reasonable approximation of its costs. (Dkt. 58-1 at 22-23); *see also* Small Cell Order, 33 F.C.C. Rcd. at 9128 ("Fees that cannot ultimately be shown by a state or locality to be a reasonable approximation of its costs, such as high fees designed to subsidize local government costs in another geographic area or accomplish some public policy objective beyond the providers' use of the ROW, are not 'fair and reasonable compensation . . . for use of the public rights-of-way' under Section 253(c)." (alteration in original)).

Defendant contends that before the issue of reasonability comes into play, Plaintiff must first bear the burden of "demonstrat[ing] a prohibition or effective prohibition of service under § 253(a)." (Dkt. 61-5 at 5). According to Defendant, it is only once Plaintiff makes this initial showing that "the burden shifts to the municipality to demonstrate that the regulation or fee at issue is subject to the safe harbor provision set forth at § 253(c)." (*Id*. at 5-6).

Defendant's argument misses the mark.  It is true that there are district court opinions in this Circuit indicating that a plaintiff challenging a local requirement pursuant to Section 253 must initially provide "evidence as to what the actual economic effect of these requirements was or would have been upon the company."  *NextG Networks of New York, Inc. v. City of New York*, No. 03 CIV 9672 RMB/JCF, 2006 WL 538189, at *12 (S.D.N.Y. Mar. 6, 2006), *aff'd in part, rev'd in part*, 513 F.3d 49 (2d Cir. 2008).  However, those cases predate the Small Cell Order.  In the Small Cell Order, the FCC determined as a matter of statutory interpretation that "fees above a reasonable approximation of cost, even when they may not be perceived as excessive or likely to prohibit service in isolation, will have the effect of prohibiting wireless service[.]"  33 F.C.C. Rcd. at 9123.  In other words, the Small Cell Order has collapsed the inquiry where fees are concerned—if a fee exceeds a reasonable approximation of a municipality's costs, by definition it is impermissibly prohibitive and does not constitute fair and reasonable compensation.

The Small Cell Order further unequivocally places the burden of demonstrating that the fees at issue are a reasonable approximation of costs on the municipality.  This is a reasonable interpretation of the statutory language, which is silent on which party bears the burden of proof.  *See Keyes v. Sch. Dist. No. 1, Denver, Colo*., 413 U.S. 189, 209 (1973) ("There are no hard-and-fast standards governing the allocation of the burden of proof in every situation. The issue, rather, is merely a question of policy and fairness based on experience in the different situations." (quotation omitted)).  Defendant unquestionably has more information at its disposal regarding its costs than Plaintiff.  *See Nat'l Commc'ns Ass'n Inc. v. AT&T Corp.*, 238 F.3d 124, 130 (2d Cir. 2001) (adopting FCC's practice

regarding allocation of burden of proof and noting that "all else being equal, the burden is better placed on the party with easier access to relevant information"). Further, it is desirable to "avoid requiring a party to shoulder the more difficult task of proving a negative." *Id*. (finding it "preferable to require AT&T to prove the reasonableness of any discrimination in the provision of like services, rather than requiring NCA to prove unreasonableness"). The Small Cell Order's allocation of the burden of proof is consistent with these principles and the Court will apply it.

## VII.   <u>Issues of Fact Preclude Summary Judgment in Favor of Either Party</u>

The Court turns, finally, to the specifics of Plaintiff's claims. As noted above, Plaintiff has two causes of action: (1) a claim that the City has violated Section 253(a) and (c) by charging excessive small wireless facility attachment fees; and (2) a claim that the City has violated Section 253(a) and (c) by charging excessive recurring fees for underground and aerial installations. (Dkt. 1 at ¶¶ 78-94). In light of the Court's holdings set forth above, the determinative factual issue on each of these claims is whether the fees at question are a reasonable approximation of the City's costs. That issue is not amenable to resolution by the Court on the instant record.

In support of its contention that the fees at issue are cost-based, the City relies upon an analysis undertaken by Louie Tobias, its Director of Telecommunications. (Dkt. 57-9 at ¶ 21). This cost analysis is reflected in a spreadsheet prepared by Mr. Tobias. (*Id*.; *see also* Dkt. 57-6). According to Mr. Tobias's cost analysis: (1) the City's approximate ROW costs related to small cell facilities on a per-facility basis is $4,381 per pole attachment based upon an assumption of 300 installations per year and $6,571 per pole attachment

based upon an assumption of 200 installations per year; and (2) the City's approximate ROW costs related to linear telecommunications facilities are $6.13 per linear foot.  (Dkt. 57-6; Dkt. 57-9 at ¶¶ 27-28).

Plaintiff has identified a host of reasons why it contends Mr. Tobias's analysis cannot serve as adequate proof that the City's fees are a reasonable approximation of its costs, including: (1) the spreadsheet compiled by Mr. Tobias contains inadmissible hearsay; (2) the spreadsheet violates Federal Rule of Evidence 1006; (3) the spreadsheet does not approximate actual costs and its estimates are unreliable; (4) Mr. Tobias failed to distinguish between recurring and non-recurring costs; (5) Mr. Tobias did not appropriately measure incremental costs; and (6) Plaintiff's expert has "debunked" the spreadsheet. (Dkt. 58-1 at 24-34).  The Court is unpersuaded by these arguments.

## A.    The Spreadsheet is not Categorically Inadmissible under the Federal Rules of Evidence

As to the contention that the spreadsheet contains inadmissible hearsay, Plaintiff contends that it "reflects information about what City employees purportedly stated to Mr. Tobias regarding the time that they supposedly spend on various tasks."  (Dkt. 59-1 at 24). It is well-established that a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985).  However, the Court is not persuaded, on the record before it, that the information contained in the spreadsheet could not be admitted at trial.  In particular, the Court notes that pursuant to Federal Rule of Evidence 803(8)(A)(i), the rule against hearsay does not

apply to "[a] record or statement of a public office if it sets out the office's activities" unless "the opponent . . . show[s] that the source of information or other circumstances indicate a lack of trustworthiness." Here, having examined the spreadsheet, it appears to be in significant part a compilation of statements by various departments within the City regarding activities those departments perform and how long those activities take. (Dkt. 57-6; *cf.* Dkt. 58-2 at ¶ 72 ("The Spreadsheet lists numerous tasks, categorizing such tasks by City department, that allegedly relate to small cells and backhaul facilities")). These statements appear on their face to fall within the plain language of Rule 803(8)(A)(i). *See, e.g., Chapman v. San Francisco Newspaper Agency*, 2002 WL 31119944, at *1-2 (N.D. Cal. Sept. 20, 2002) (finding a printout of a "'Track & Confirm' page at the USPS website" admissible under Rule 803(8)(A) because "[t]he USPS qualifies as a public agency" and "[t]he delivery confirmation is a record of the activity that the USPS carries out—namely the delivery of mail"). Additionally, unlike the business record exception (Rule 803(6)), the public record exception "does not require any foundational testimony" from a custodian or other witness. *United States v. Doyle*, 130 F.3d 523, 546 (2d Cir. 1997) (quotation omitted).

The Court notes that the Second Circuit has stated in dicta that "Rule 803(8) excludes documents prepared for the ultimate purpose of litigation." *United States v. Feliz*, 467 F.3d 227, 237 (2d Cir. 2006)[4]. However, in this case, the current record does not

---

[4]       On the other hand, as the Supreme Court has noted, the Advisory Committee identified "possible bias when reports are prepared with a view to possible litigation" as a relevant factor in the Rule 803(8)(B) trustworthiness inquiry, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 n.11 (1988), suggesting that such reports are not categorically

warrant a finding that the City employee statements memorialized in the spreadsheet were made for litigation purposes.  While Plaintiff claims that Mr. Tobias "testified that the Spreadsheet itself was prepared in anticipation of litigation from Verizon and others" (Dkt. 58-2 at ¶ 69), the Court does not find that to be an accurate summary of Mr. Tobias's deposition testimony.  The Court notes that the spreadsheet was created in April of 2019 (*see* Dkt. 58-2 at 3), while the instant litigation was not commenced until August of 2019 (Dkt. 1).  Further, Mr. Tobias testified that the spreadsheet was created as "a way to graphically represent it to someone who is asking the questions of how we got to where we got." (Dkt. 58-28 at 3).  As noted above, on April 15, 2019, Plaintiff sent the City a letter in which it specifically asked for "support" for the City's position that the fees set forth in the Telecom Code "are cost-based and include only objectively reasonable costs."  (Dkt. 3 at 2-3).  Nowhere in this letter did Plaintiff threaten or make any reference to litigation.

Further, Mr. Tobias discussed at his deposition the fact that the actual information memorialized in the spreadsheet had been compiled before April of 2019.  (Dkt. 58-28 at 3, 5).  Emails were apparently produced and discussed during Mr. Tobias's deposition from January of 2019 in which it was noted that the City was "looking to quantify . . . [its] current operating and capital costs for work done in the right-of-way" in order to "prepare for the ordinance to go to council for adoption."  (*Id*. at 4).  In other words, these emails seemingly support Mr. Tobias's testimony that the creation of the spreadsheet in April of 2019 was

---

excluded under Rule 803(8)(A).  The Court need not and does not resolve this issue at this time.

the culmination of ongoing efforts that predated the adoption of the Telecom Code and thus it was not created for litigation purposes.

Plaintiff also points to the following statement from Mr. Tobias's deposition as evidence that the spreadsheet was created in anticipation of litigation: "The math sounds correct.  When we were doing the final analysis, what I was trying to get to was to make sure that our $1,500 number was reasonable or below our actual cost because that was the driver of the final exercise as it related to the lawsuit."  (Dkt. 58-5 at 59).  However, in context, it is clear that this statement refers not to the gathering of information from the various City departments for inclusion in the spreadsheet, but the mathematical calculations that were performed after the data had already been gathered.

Finally, while Plaintiff argues that the spreadsheet was prepared in a "haphazard, informal, and irregular manner" (Dkt. 58-1 at 24), the Court does not find the record sufficiently developed to warrant a finding that "the source of information or other circumstances indicate a lack of trustworthiness, " Fed. R. Evid. 803(8)(B).  In particular, the Court has no information before it to suggest that the City employees tasked with reporting their respective department's activities were untruthful or improperly motivated. *See In re MetLife Demutualization Litig.*, 262 F.R.D. 217, 237 (E.D.N.Y. 2009) ("Rule 803(8) is grounded on the presumption—based on experience of the drafters, the Supreme Court, Congress, and the President—that 'public officials perform their duties properly without motive or interest other than to submit fair and accurate reports.'" (quoting *Bradford Trust Co. v. Merrill Lynch*, 805 F.2d 49, 54 (2d Cir. 1986)).

- 26 -

The Court is similarly unpersuaded that Federal Rule of Evidence 1006 categorically bars admission of the spreadsheet. Rule 1006 provides: "The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court." However, the spreadsheet does not purport to summarize or otherwise reflect the contents of "voluminous writings, recordings, or photographs." Instead, as Plaintiff has acknowledged, it incorporates verbal statements by various City employees regarding the work their respective departments perform. (*See* Dkt. 58-2 at ¶ 91 ("The Spreadsheet is based on Mr. Tobias' conversations with City employees, asking them to tell him what they do and how much of their day is done doing that." (quotation and alteration omitted)), ¶ 97 ("Mr. Tobias conceded that the City has no backup worksheets, notes, or other documents to support the figures in the Spreadsheet.")). Accordingly, Rule 1006, by its own terms, does not apply to the spreadsheet. *See United States v. Winn*, 948 F.2d 145, 158 n.32 (5th Cir. 1991) ("Summary of purely testimonial evidence is strictly speaking not within the purview of Rule 1006.").

Plaintiff claims that Mr. Tobias testified that "at least some underlying documentation for the Spreadsheet 'got tossed or overwritten.'" (Dkt. 58-2 at ¶ 99). Again, the Court does not view this as an accurate summary of Mr. Tobias's testimony. Mr. Tobias was asked, "Do you have other versions of this spreadsheet saved on your computer," to which he replied, "I don't think so. I would have to go through my computer and see. You

know, there are things that I got that somebody said, oh, that doesn't matter.  That stuff got tossed or overwritten."  (Dkt. 58-5 at 48).  Read in context, Mr. Tobias's statement was not referring to documentation that was incorporated into the spreadsheet, but to information that was deemed irrelevant to his analysis.  On the record before the Court, there is no basis to conclude, as Plaintiff contends, that the spreadsheet summarizes documents that have not been produced by Defendant.

To be clear, the Court is not definitively determining that the spreadsheet would be admissible at trial.  It simply cannot conclude on this record that the spreadsheet is inadmissible.

**B.      <u>Plaintiff's Remaining Challenges to the Spreadsheet Are For the Trier of Fact to Resolve</u>**

Plaintiff's substantive challenges to the spreadsheet and the assumptions it makes are not amenable to resolution by the Court on summary judgment.  *See, e.g., Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) ("[I]t is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" (quoting *Fischl v. Armitage*, 128 F.3d 50, 55-56 (2d Cir. 1997))).  This is particularly true because the City is required only to show that the fees at issue are a reasonable estimate of its actual costs.  Reasonableness is not the sort of determination that is generally amenable to resolution as a matter of law.  *Cf. Matzkow v. United New York Sandy Hook Pilots Ass'n*, No. 18-CV-2200 (RER), 2022 WL 79725, at *11 (E.D.N.Y. Jan. 7, 2022) ("[C]ourts are

generally reluctant to grant summary judgment in negligence cases because the assessment of reasonableness is generally a question of fact in all but the most extreme cases.").

The Court's conclusion is not changed by Plaintiff's assertion that its expert witness, Christian Dippon, has offered "unrebutted" opinions "debunking" Mr. Tobias's cost analysis. (Dkt. 58-1 at 33). Plaintiff cites no authority for the proposition that the City was required to produce its own expert to challenge Mr. Dippon's conclusions, as opposed to relying on cross-examination at trial. Further, "it is the role of the [trier of fact] to determine the credibility of an expert witness"—a determination not appropriate for resolution based on a cold record submitted in connection with a dispositive motion. *Alves v. Affiliated Care of Putnam, Inc.*, No. 16-CV-1593 (KMK), 2022 WL 1002817, at *6 (S.D.N.Y. Mar. 30, 2022).

For essentially the same reasons, the Court also rejects the City's suggestion that it should determine, as a matter of law, that the challenged fees constitute reasonable compensation. (*See* Dkt. 57-10 at 24); *see Hotel Emp. & Rest. Emp. Union, Local 100 of New York, N.Y. v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (in considering competing motions for summary judgment, the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration"). A reasonable trier of fact could find in Plaintiff's favor on this disputed issue of fact.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that neither Plaintiff nor Defendant is entitled to summary judgment in its favor.  The parties' competing motions for summary judgment (Dkt. 57; Dkt. 58) are accordingly denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  August 22, 2022
  Rochester, New York